Wharton.
5wh?44
184  416

[ PHILADELPHIA, JANUARY 27TH, 1840. ]

## TREVOR *against* PERKINS.

### IN ERROR.

The charter of the Pennsylvania and Ohio Canal Company declared that the stock of the company should be considered as real estate, and the shares transferred by deed duly acknowledged, and recorded in a book to be kept for the purpose. The plaintiff subscribed for one hundred shares of this stock, and paid $5 on each share, being the first instalment required by law, and took a receipt from the commissioner. A few days afterwards he sold these shares to the defendant for $1100, and gave a power of attorney to transfer them to the defendant, " subject to the payment of the remaining instalments by the said (defendant,) or his assigns, as the same may be called in." No formal assignment was made of these shares. About a month afterwards, a second instalment was called for; and a few days after the call, and before the time of payment, the defendant sold these shares to a third person, and gave him the receipts for the first instalment, and the power of attorney, in which he had erased his own name. Neither the defendant, nor the purchaser from him paid the second instalment, and the plaintiff afterwards paid it on his original subscription, and brought this action for reimbursement. A witness, who was present at the conversation between the plaintiff and defendant, at which the contract of sale took place, testified that he had a faint impression that there was something said about liability for instalments: *Held*, that there was evidence to go to a jury of a contract on the part of the defendant to indemnify the plaintiff against the subsequent instalments; and that if they were satisfied that there was such an agreement, either verbal or written, the plaintiff was entitled to recover.

THIS was a writ of error to the District Court for the City and County of Philadelphia, to remove the record of an action of assumpsit, brought by John B. Trevor against Thomas J. Perkins.

The circumstances upon which the action was founded appeared to be as follows:

On the 10th of January, 1827, the legislature of the state of Ohio passed an act to incorporate a company called " The Pennsylvania and Ohio Canal Company ;" for the purpose of constructing a canal from the Ohio State Canal to the Pennsylvania Canal, at or near Pittsburgh, or at some other suitable point. This act was confirmed by the legislature of Pennsylvania, on the 14th of April, 1827; and

various supplements were afterwards passed. The material provisions of these acts were the following :

" SECT. 13. The said corporation shall be, and is hereby authorised to raise sufficient funds for the accomplishment of the objects: aforesaid ; and for that purpose, the persons named in the first section of this act, or a majority of them, shall be commissioners, whose duty it shall be, so soon after the taking effect of this act, as a majority of them shall judge proper, to cause books to be opened at such times and places as they shall think fit, in the states of Ohio and Pennsylvania, and elsewhere, under the management of such persons as they shall appoint, for receiving subscriptions to the capital stock of said company, each share to be of the amount of one hundred dollars, and each subscriber to be a member of said corporation for all purposes; and public notice shall be given, in such manner as may be deemed advisable by the said commissioners,. of the times and places of opening such books ; and the said commissioners, or a majority of them, may prescribe the form of said subscription ; and whenever the sum of five hundred thousand dollars,. or the greater part of the stock of said company shall have been subscribed, it shall be the duty of said commissioners, or a majority of them, to call a meeting of the stockholders, by causing notice to be published in one or more newspapers in general circulation in the respective places in which the books shall have been opened, and stock subscribed, at least twenty days previous thereto, of the time and place of such meeting, which shall be at some convenient town, or place, near the route of the contemplated canal; at which meeting the stockholders who shall attend for that purpose, either in person, or by lawful proxy, shall elect by ballot seven directors, who shall hold their offices until the expiration of one year, and until others shall be chosen in their places; and the said commissioners shall be inspectors of the first election of directors of the said corporation, and shall certify under their hands, the names of those duly elected, and shall deliver over to them the said certificates and subscription books; and at said election, and at all other elections, or voting of any description, every member shall have a right to vote by himself, or proxy duly authorised in writing, and each share shall entitle the holder to one vote ; and that the management of the concerns of the said corporation, shall be entrusted to seven directors, to be elected annually by the stockholders, by ballot; and that the directors first chosen, and such directors as shall thereafter be chosen, at any subsequent election, shall immemediately thereafter meet and elect one of their number, who shall be president thereof, until another election, and also elect a treasurer and secretary, who may be removed at the pleasure of the said president and directors, and others elected in their places ; and that

(Trevor *v.* Perkins.)

a majority of the said directors shall constitute a board, for every purpose within the provisions of this act."

"SECT. 15. The books of subscription shall remain open as long as the president and directors of said company shall see fit; and each subscriber shall be bound to pay, from time to time, such instalments on his stock, as the said president and directors may lawfully require, they giving at least thirty days previous notice, of the time and place of making the payments required, in at least one newspaper in general circulation in each of the counties through which the said canal may pass; but no assessment shall ever be made, so as to render any subscriber liable to pay more than one hundred dollars for a share. If, however, after the closing of said books, or at any time, it shall appear that sufficient funds have not been raised, the president and directors of said company, or its officers duly authorised for that purpose, may, at any time, and from time to time, raise the necessary funds, by creating and selling additional shares, in such manner and upon such terms, as the said president and directors shall prescribe; and the holders of such additional shares shall thenceforward be members of said corporation for all purposes.

SECT. 16. If any subscriber shall neglect to pay his subscription, or any portion thereof, for the space of thirty days after he is required so to do, by the said president and directors, notice having been given, as required in this act, the treasurer of said corporation, or other officer duly authorised for that purpose, may make sale of such share or shares, at public auction, to the highest bidder, giving at least thirty days previous notice thereof, in some newspaper in general circulation at the place of sale; and the same shall be transferred by the treasurer, in the manner hereinafter provided, to the purchaser, and such delinquent subscriber shall be held accountable to the corporation for the balance, if his share or shares shall be sold for less than the amount remaining due thereon, and shall be entitled to the overplus, if the same be sold for more than the amount so remaining due, after deducting the costs of sale.

SECT. 17. The stock of said corporation, shall be deemed and considered real estate; and any share or shares of any stockholder, may be transferred by deed duly acknowledged, and recorded by the clerk of said corporation, in a book to be kept for that purpose, which book or books shall at all reasonable times, during the usual hours of transacting business, be open to the examination of any person having in his possession any demand against said company; and the treasurer is hereby authorised to make transfers in like manner, of the shares of members sold, according to the provisions of the last preceding section of this act."

Subscription books were opened in the city of Philadelphia, and

the plaintiff became a subscriber for one hundred shares on the 27th of April, 1835, and signed the following paper.

" We whose names are hereunto subscribed, each of us do promise to pay to the directors of the Pennsylvania and Ohio Canal Company, the sum of one hundred dollars for every share of stock set opposite our respective names and by us respectively subscribed, in such manner and proportions, and at such times and places as shall be directed and determined upon by the said directors, in pursuance of an act authorising the governor of this commonwealth to incorporate the Pennsylvania and Ohio Canal Company.

In witness whereof, we have set our hands, this twenty-seventh day of April, A. D. 1835, in the city of Philadelphia."

The plaintiff paid five dollars on each share at the time of subscribing; and two certificates (Nos. 112 and 113) for fifty shares each were issued to him.

On or about the 24th of April, 1835, the defendant Perkins applied to the plaintiff for the purchase of these shares. He agreed verbally to give ten or eleven dollars per share for the five paid. The witness for the plaintiff who proved this, stated that he had a faint impression that there was something said about liability for instalments. Perkins then gave the plaintiff his check of the same date for eleven hundred dollars, which was paid; and the plaintiff gave him a power of attorney in the following form :

" Know all men by these presents, that I, John B. Trevor, for value received have constituted and appointed, and do hereby irrevocably constitute and appoint                                   my true and lawful attorney for me, and in my name to transfer and assign to Thomas J. Perkins one hundred shares in the capital stock of the Pennsylvania and Ohio Canal Company upon which five dollars per share have been paid, as per the receipt of B. Chew, Jr., Thomas Biddle and Wm. Boyd, a committee of commissioners, dated 27th of April last, Nos. 112 and 113 hereto annexed, subject to the payment of the remaining instalments by the said Thomas J. Perkins, or his assigns, as the same may be called in, and I do hereby further empower my said attorney to do and execute whatever may be needful and necessary to carry this authority into full effect, and furthermore to substitute and appoint one or more persons under him with like power, hereby giving to my said attorney full power, strength and authority in the premises, and ratifying and holding for firm and effectual all that he shall lawfully do therein.

Witness my hand and seal, this 9th day of May, A. D. 1835.

Signed, sealed, and delivered in

    the presence of   L. Knowles, Jr.

                 N. Knowles.   JNO. B. TREVOR.     [ Seal. ]

" (Endorsed)    Transfer of 100 shares of the Penna. and Ohio Canal.    J. B. Trevor to ————."

When the power was drawn or executed did not exactly appear, but it would seem that it was about the time of receiving the check or within a few days afterwards, and was a part of the arrangement. When received by the defendant it was filled up with his name as above. On the 28th of May, 1835, the defendant sold these shares to Hallowell & Co. at four dollars fifty cents for five dollars paid; and the power of attorney and two receipts for the original payments by the plaintiff were delivered over to them; the name of the defendant having previously been erased by him.

On the 22d of May, 1835, the stockholders had agreed to call for the second instalment upon the stock; and notices were published in the United States Gazette at Philadelphia, on the 26th of May, and on the 3d of June, 1835, at the places where the canal passes, calling for payment of this instalment on the 3d of July. The instalment on the one hundred shares sold by the plaintiff to the defendant was not paid by the defendant or his vendee.

On the 11th of March, 1836, the plaintiff paid the attorney for the company the sum of five hundred dollars, being the amount due for the second instalment on these shares, which had been sold at auction by the company, under the 16th section of the charter. This action was brought for reimbursement.

The case was tried before Pettit, President, on the 28th of October, 1837, when, after testimony had been given to the foregoing effect, the plaintiff's counsel requested the Court to charge—

" 1. That the transfer in question by parol and payment of the check on the 29th of April, 1835, made the defendant liable to the plaintiff for the second instalment, after the defendant had declined to pay, and the plaintiff was compelled to pay it.

2. That the acceptance of the defendant from the plaintiff, of the letter of attorney of the 9th of May, 1835, renders the defendant liable for the conditions contained in the same.

3. That such liability cannot be altered by the defendant without the consent of the plaintiff.

4. That the erasure of the defendant's name by the defendant, without the consent of the plaintiff, is void, so far as regards the plaintiff.

5. That the parol agreement and the delivery of the papers constituted a valid contract between the plaintiff and defendant, and a valid transfer of the stock, though not according to the terms of the act of incorporation."

(Trevor v. Perkins.)

The learned judge after stating the case proceeded in substance as follows:

" The defendant denies that in point of fact the plaintiff ever was committed to the company for the sum he paid. The defendant denies that the proper steps were taken by the company, as to the call for the second instalment, or as to the thirty days notice, or as to the public advertisement. There is evidence on all these matters for the consideration of the jury, but the great object of this cause would not be accomplished if it went off on this point. Assuming for the argument, that all that ought to have been done by the company was done, and that what the plaintiff paid, he paid rightly, yet the defendant alleges, that on the true construction of the charter, he is not liable to the payment of the present demand; and that he has made no agreement beyond the charter. This brings up the main question of this, and it is understood of many other causes. I shall consider the subject in two aspects.

1. On the act of incorporation alone, supposing the paper of the 9th of May, 1835, to be a mere power of attorney and nothing more.

2. As to the alleged necessary import of the paper of the 9th of May, 1835, as matter of law binding the parties, and calling for a decision by the Court.

We shall then be able to see whether there is any thing connected with that paper which presents such a mixed question of law and fact as requires the determination of the jury.

First. It is necessary to consider the 15th, 16th and 17th sections of the charter. (The judge here read them.)

Now this stock is to be deemed and considered as real estate; and transfers of it may be made by deed duly acknowledged. The subsequent alteration of the charter does not reach the case now before us. The first payment having been made, the stock was to be deemed as real estate, subject to certain payments of instalments at the call of the company. Then as real estate, what is the law applicable to the subject. The first contractor is liable. He may make a conveyance, the estate being still subject to the payment of instalments. As a covenant runs with the land, so this was an undertaking running with the property. As a covenant running with the land binds the original covenantor by the privity of contract, and any actual holder by privity of estate ; so here, the undertaking or agreement running with the stock, binds the original subscriber by the privity of contract, and the actual holder by privity of estate. It is conceded that if the defendant had a transfer from the plaintiff, so as to raise the question at all, Hallowell had as valid a transfer from the defendant. In each instance a verbal compact existed, accompanied by a delivery of the scrip. The cause has been treated as if the plaintiff had made a deed to the defendant,

VOL. V.—32

and the defendant another to Hallowell. While the plaintiff contends that his omission to make a deed to the defendant, does not defeat his action, he cannot claim any advantage from the omission of the defendant to make a deed to Hallowell—nor has he done so. By the rule of law then, just stated, the defendant has avoided responsibility to the company, and of course to the plaintiff in this suit.

Second. We come now to the power of attorney with the clause on which the plaintiff relies. If this clause made a difference in point of law, the question of delivery and acceptance of the paper would be important. But admitting it to be ascertained that the plaintiff delivered the paper to the defendant, and that the defendant accepted it without alteration, does it change the contract already made—the contract based upon the charter? This depends upon the words appearing on the face of the paper; and taking the paper in connection with the charter, there is presented a question of law for the Court. The instrument appoints, to transfer to Thomas J. Perkins, one hundred shares, &c., "Subject to the payment of the remaining instalments by the said Thomas J. Perkins, or his assigns, as the same may be called in." This language is quite clear to me. If it can be construed in perfect consistency with the charter, it ought to be so construed. Before any change of contract can be imputed to the parties, the intention to make it must be manifest. If any alteration was contemplated, it is to be assumed that it would have been plainly expressed. If the clause was merely language of explanation, or reference, or qualification, it must not be perverted into language of contract. What was the charter? Each instalment, after passing by the first subscriber, was to be paid by the actual holder of the stock at the time of such instalments being called in. The defendant took the stock with a personal obligation resting upon him, commensurate only with the time of his holding it; an undertaking to pay if he held, when instalments were called in and made payable; but with an understanding that if he assigned before that, then his assignee, and not himself, was to be liable to pay; and so on successively. This construction harmonizes with the act of incorporation òf the company. It is consistent with the compact previously made by the parties. It gives full effect to every part of the instrument. Perkins or his assignee is to pay, as the circumstances of the case under the charter may happen to require : Perkins, should one state of things known to the charter, happen to exist when an instalment is made payable, or his assignee, whoever he may be, should another state of things, also known to the charter, happen then to exist. This view also comports with good faith; as it rejects, in regard to either party, a design to fix by the mere form of words, a material stipulation which had not existence in the intention of the parties."

The judge then read the points presented by the plaintiff's counsel, and answered each of them according to the principles already laid

down, and added, that upon the law of the case the verdict should be for the defendant.

The jury found for the defendant, according to the charge; and the plaintiff having taken a bill of exceptions, and removed the record to this Court, made the following assignment of errors.

" Because the Court charged the jury—

1. That the transfer in question by parol and payment of the check on the 29th of April, 1835, did not make the defendant liable to the plaintiff for the second instalment, after the defendant had declined to pay, and the plaintiff had been compelled to pay it.

2. That the acceptance by the defendant from the plaintiff of the letter of attorney of the 9th of May, 1835, does not render the defendant liable for the conditions contained in the same.

3. That the liability of the defendant in the said case could be altered without the plaintiff's consent.

4. That the erasure of the defendant's name, in the letter of attorney, by the defendant, without the consent of the plaintiff, was valid and binding on the plaintiff.

5. That the parol agreement and delivery of the papers, did not constitute a valid contract between the plaintiff and defendant, nor a valid transfer of the stock.

6. That under any view of the case, the plaintiff was not entitled to recover."

Mr. *Randall,* for the plaintiff in error.

1. It is admitted that the plaintiff, as an original subscriber, was always liable to the company; but there is a cumulative remedy. *West Philadelphia Canal Co.* v. *Innes,* (3 *Wharton,* 198.) *Hartford, &c. Co.* v. *Kennedy,* (12 *Conn. Rep.* 499.)  *Union Canal Co.* v. *Sansom,* (1 *Binn.* 75.)  In the case of the *Huddersfield Canal Co.* v. *Buckley,* (7 *Term Rep.* 36,) it was held, that an original subscriber was not liable for any call made after assigning his share.

2. The transfer in this case was certainly good, as between the parties, though not according to the prescribed form; and may also be considered binding on the company. *Angel on Corporations,* 316, 368.   *Quiner* v. *Marblehead Ins. Co.* (10 *Mass.* 476.)  *Sargent* v. *Franklin Ins. Co.* (8 *Pickering,* 90.)  *Bank of Utica* v. *Smalley,* (2 *Cowen,* 770.)  *Bates* v. *N. Y. Ins. Co.* (3 *Johns. Cas.* 238.)

3. The words, " subject to the payment of the remaining instalments," create a covenant by the defendants to pay them, though in a deed poll. It was a question of fact for the jury upon the contract, which was partly parol and partly written.  *Tanner* v. *Kearney,* (17 *Serg. & Rawle,* 94.)  *Campbell* v. *Shrum,* (3 *Watts,*

(Trevor v. Perkins.)

60.) In *Steward* v. *Wolveridge*, (9 *Bing.* 60 ; S. C. 23 *Eng. Com. Law Rep.* 262,) it was held, that an assignee who takes from a lessee leasehold premises by indenture endorsed on the lease, " subject to the rent reserved in the lease," is liable in covenant to the lessee for rent, which the lessee has been called on by the lessor to pay, after the assignee has assigned over.

Mr. *Hazlehurst,* for the defendant in error.

1. The defendant is not liable upon any construction that may be given to the different acts of assembly, incorporating the Pennsylvania and Ohio Canal Company. By the seventeenth section of the charter, the stock in question is *deemed* and *considered* real estate. Not only is it so characterised in the act of incorporation, but the mode by which it is to be transferred is that which is alone applicable to real property, viz. by *deed duly acknowledged.* The original subscriber is the *first contractor ;* he is bound to the company, and is liable by reason of the privity of contract ; any holder would be bound by privity of estate. *Spencer's Case,* (6 *Coke,* 16 ; S. C. *Law Library,* for January, 1838, 17 ; *Smith's Selection.*)   1 *Bos. & Pull.* 21.   2 *Atkyns,* 546.   3 *Campbell's Rep.* 394.

2. The transfer of the 9th of May, 1835, does not create such a contract as will make the defendant liable. The words " subject to," &c. are words of condition and qualification, and not words of contract. *Rolle's Abridgement,* title Covenant, *pl.* 52, 53. *Stainer* v. *Morris,* (1 *Vesey & Beames,* 8.)   *Burnett* v. *Lynch,* (5 *Barn. & Cres.* 589 ; S. C. 12 *Eng. Com. Law Rep.* 327.)   *Chancellor* v. *Poole,* (2 *Douglas,* 754.)   The case of *Wolveridge* v. *Steward,* cited on the other side, was reversed in the Exchequer Chamber. 3 *Moore & Scott,* 561 ; S. C. 30 *Eng. Com. Law Rep.* 316. *Herbaugh* v. *Zentmeyer,* (2 *Rawle,* 159.)

Mr. *J. R. Ingersoll,* on the same side, cited *Sargent* v. *Essex Marine Co.* (9 *Pickering,* 202.)   *Lutw.* 127.   2 *Keble,* 189, *pl.* 35. 2 *Str.* 1221.   *Camb.* 192.   1 *Salk.* 82.   *Sugden on Vendors,* 118.   1 *Campbell,* 412.   12 *Johns.* 418.   13 *Pickering,* 75.

The opinion of the Court was delivered by

SERGEANT, J.—The plaintiff being the owner of one hundred shares of the stock of the Pennsylvania and Ohio Canal Company, on which he had paid five dollars a share, the defendant agreed to purchase them from him, at the price of eleven hundred dollars, which amount he paid to the plaintiff, and received an equitable transfer of the shares. The plaintiff afterwards, in consequence of his original personal responsibility to the company as a subscriber, and the omissions of the holders subsequent to him, paid to the company the sum of five hundred dollars on account of an instalment called for and payable after his sale to the defendant. If the

(Trevor v. Perkins.)

plaintiff cannot recover this sum from the defendant, (for there is no one else liable to the plaintiff,) the plaintiff must lose it; and if he does lose it, it is manifest that he does not receive the price which the defendant, agreed to pay him for the shares, but only six hundred dollars. There is, therefore, a clear equity in the plaintiff's claim to be indemnified for this loss, as otherwise he does not receive the price which the defendant agreed to pay him, and the contract is violated in one of its most essential features.

This equity, that a purchaser is bound to indemnify the vendor against known outstanding incumbrances, which enter into the consideration or price stipulated, has been recognized and enforced in many instances. A purchaser of a leasehold estate must covenant with the vendor to indemnify him against the rents and covenants in the lease, although he is not expressly required to do so by the conditions of sale. *Pember* v. *Mathers*, (1 *Bro. C. C.* 52.) And it will not vary the case that he is not entitled to any covenants for title; for example, where the sale is by an executor of an assignee. *Stainer* v. *Morris*, (1 *Ves. & Beam.* 8;) and see *Wilkins* v. *Fry*, (1 *Mer.* 244.) And although a purchaser is not required by the conditions of sale, to give an indemnity against the rents and covenants, and an assignment is actually executed without an indemnity being given; yet even a verbal agreement by the purchaser, before the sale, to secure such indemnity, will be carried into a specific execution, if it be distinctly proved. *Pember* v. *Mathers*, (1 *Bro. C. C.* 52, cited *Sugd. Vend.* 27, 185, c. iii. sec. 3, c. iv. sec. 3.) So, although a purchaser of an equity of redemption, enter into no obligation with the party from whom he purchases, to indemnify him from the mortgage money, yet equity, if he receives the possession, and has the profits, would, independently of contract, raise upon his conscience an obligation to indemnify the vendor against the personal obligation to pay the mortgage money; for having become owner of the estate, he must be supposed to intend to indemnify the vendor against the mortgage. 7 *Ves. Jr.* 337, per Lord ELDON. *Sudg. Vend.* 185. The same principles were recognized by this Court, in *Kearney* v. *Tanner*, (17 *Serg. & Rawle*, 94,) where Tanner having a house which he had encumbered by bond and mortgage, sold it to Kearney. Afterwards, being obliged to pay the bond, the house having been sold under a proceeding on the mortgage, for less than the mortgage money, it was held that he might recover the balance against Kearney, upon evidence of a verbal agreement by Kearney to buy subject to the mortgage. So in *Shrum* v. *Campbell*, (3 *Watts*, 70,) Shrum had bought land, by articles of agreement, from Mr. Astley, and part of the purchase-money remaining unpaid, Shrum, by articles of agreement under seal, sold to Campbell, the defendant, subject to the incumbrance. This was held a covenant by Campbell to indemnify Shrum against the outstanding purchase-money, which he had originally contracted to pay Astley. These are all

(Trevor *v.* Perkins.)

cases of contracts of purchase and sale, in which the purchaser agrees to assume the known incumbrance, and is compelled to do no more than it is consonant to plain equity and justice he should do, and without which the vendor must certainly sustain a loss, directly in opposition to the agreement of the vendee. And such is the present case. Trevor sold to Perkins at a certain sum : they stood as vendor and vendee : Trevor by the charter continued personally responsible to the company for the remaining instalments, if not paid by the holders or others, as was decided by this Court in *Union Canal* v. *Sansom,* (1 *Binn.* 75.) When he paid the second instalment, he did what he was obliged to do, and having done it, if there was any agreement or understanding by Perkins, either in writing or otherwise, at the time of the sale, to indemnify Trevor, he is liable to an action for his reimbursement. I am even inclined to think, that such agreement would, in equity, be implied as intended by the parties, from the nature of the transaction ; and that in the case of an assignee selling as well as a lessee. See *Stainer* v. *Morris,* (1 *Ves. & Beam.* 8.) But it is unnecessary to go so far here, because the case shows there was evidence of an express contract, not only in the circumstances that occurred, but in the language of the power of attorney to transfer the stock which is a material part of the contract. This power must be considered as it existed when delivered by the plaintiff to the defendant : no subsequent alteration of names inserted, made without consent of the plaintiff can affect him.

Considerable difference of opinion, it appears, has prevailed as to the effect which is to be given in an indenture of assignment of a lease by a lessee, to the words " subject to the rent reserved in the lease." The Court of Common Pleas in England, in 1832, in the case of *Steward* v. *Wolveridge,* (9 *Bing.* 60 ; 23 *Eng. Com. Law Rep.* 262,) held that they constituted an express covenant by the the assignee with the lessee, to pay rents which the lessee was subsequently called on to pay. In 1833, this decision was reversed in the Exchequer Chamber, the judges holding that they constituted words of qualification not of contract. 3 *Moore & Scott,* 561 ; S. C. 30 *Eng. Com. Law Rep.* 313. The latter decision seems to have turned on the strict legal meaning of these words used in an indenture of assignment, under which the party was held not to have intended a contract of indemnity. However that may be in a Court of law, in formal conveyances, in which the parties have selected certain terms, and omitted others, from which and from the subject-matter it is inferred, that there was no agreement intended, it does not apply to those cases where there is a contract, whether verbal or written, amounting to an agreement to indemnify, which a Court of equity is called on to enforce, by ordering an express covenant to be inserted in the deed when drawn, in favour of a purchaser for a valuable consideration. And if there was in this case evidence to

(Trevor v. Perkins.)

satisfy a jury there was such a contract, or such agreement was to be inferred from the transaction, the plaintiff is entitled to recover.

I have considered the case as that of a sale of real estate, because the seventeenth section of the charter declares, that the stock of the corporation shall be deemed and considered real estate, and any share or shares of any stockholder may be transferred by deed duly acknowledged and recorded by the clerk of said corporation in a book to be kept for that purpose, &c. This clause, (which has since been repealed,) was an anomalous provision, originally inserted in the act passed by the state of Ohio, and afterwards confirmed by the legislature of Pennsylvania. The shares of stock in the canals and rail-roads of this state have been treated as personal estate, like those of banks, insurance companies and others; on the principle that though real estate to a large amount rests in the corporation, yet the rights of the stockholders, so far as respects the receipt of the profits are only to a dividend out of the net proceeds, after charges and expenses deducted. And this has been found the most convenient mode of considering property continually passing from hand to hand by transfer of certificates not acknowledged and recorded as deeds, nor treated as vesting an interest in real estate. In the present case there was no deed executed, the transaction being of an executory character, constituting only an equitable transfer, which a court of equity would enforce between the parties according to justice and equity. It would, if there was such an understanding as required it, compel the purchaser to insert in a formal conveyance all covenants which the vendor had a right to for his security against outstanding claims on which he remained personally responsible. And in our Courts, the vendor on paying the money, may have redress in assumpsit for money paid.

Judgment reversed and *venire facias de novo* awarded.