# Young *against* Stone.

The amount of money realized by the plaintiff in a judgment, by means of a sheriff's sale of land, must be credited to the defendant, whether it be procured by a private contract with the purchaser or bid at the public sale; and if a sum be procured for the land by means of a private contract between the plaintiff and the purchaser, and the land be bid in for a smaller sum for the purpose of making the title, the larger sum must be considered for all purposes the price at which the land was sold; as well between the plaintiff and defendant as third persons interested in the price.

If a vendee of land covenant to pay an encumbrance upon it out of the amount of the purchase money, which he fails to do, by reason of which the land is sold for the payment of the encumbrance and sells for a price exceeding it, he is liable to the vendor for damages, the measure of which is the difference between the amount for which the land sold and the price which he agreed to pay for it.

ERROR to the Common Pleas of *Wayne* county.

Henry B. Stone and Hosea H. Arnold against George Young and Aaron Young, administrators of David Young deceased. This was an action of *assumpsit,* founded upon the following facts, as set out in the plaintiff's declaration : The plaintiffs were the owners of an estate called the " Torrey Mill property," upon which there was an encumbrance in favour of H. T. Allen & G. Allen of $2500. They agreed to sell the property to the defendant's intestate for $5000, in consideration of which he agreed to pay $500 in hand, to pay the encumbrance to the Allens, and the balance to the plaintiffs. The defendant did not pay the encumbrance, in consequence of which the estate was sold upon it by the sheriff, and this action was brought to recover damages for the violation of the contract. The plaintiffs gave in evidence the following agreement :

" An article of agreement made between H. H. Arnold and H. B. Stone, under the firm of Arnold & Stone, this 2d day of October 1837, of the first part, and David Young of the other part, as follows: Whereas Arnold & Stone, of the first part, agree to sell and make over unto the said David Young the property on which said Arnold & Stone now live, known by the name of the " Torrey Mill property," containing 700 acres, more or less, together with all the buildings on said premises, with all the interest in said property belonging to said Arnold & Stone, for a valuable consideration by said parties agreed upon. Witness our hands and seals the 2d October 1837."

Upon the agreement was a receipt for the $500.

The plaintiff then proved by the testimony of witnesses, that the foregoing agreement was written merely to show what the

[Young v. Stone.]

$500 were paid for, and that the parties intended to have the whole contract formally drawn at a subsequent period; that the price of the estate was $5000, to be paid by Young in the manner set out in the plaintiff's declaration. A short time after the agreement was made, and after the defendant had taken possession, he was accidentally killed. The parol testimony was exceedingly voluminous, and consisted principally of the declarations made by Young in his lifetime of the terms upon which he had purchased the property; but none of it proved, with any distinctness, when the deed was to be made, or the money to be paid. Several witnesses testified that Young said that he was to take the Allen debt upon himself and make some arrangement with the Allens to pay it.

The plaintiffs then gave in evidence the record of the suit brought on the mortgage of the Allens to September term 1839, the judgment, execution and sale of the property on the 28th of December 1839, to Joshua Totten, George S. Corwin and Richard W. Corwin. The price for which it sold, as returned by the sheriff, was $2785. The facts in relation to the price were, that on the morning before the sale the purchasers made an agreement with Amzi Fuller, Esq., the plaintiff's attorney, to give $3675 for the property, and it was to be struck down to them at any sum less than that. It was struck down to Mr Fuller at the price returned by the sheriff. Mr Fuller testified that he had settled with the plaintiffs for the full amount of their debt, interest and costs, and taken an assignment of the balance of their judgment after crediting the amount returned by the sheriff as the price at which the property sold. The plaintiff's debt and interest was about the amount for which the property actually sold, $3675.

There was some evidence given by the defendants tending to show some defects in the plaintiff's title to part of the land, which was the subject of the sale; but it did not give rise to any important question in the cause.

The plaintiff requested the instruction of the court on the following points:

1. Where, in a contract for the sale and purchase of land, no time is fixed for making the deed, the making of the deed by the vendor, and the payment or performance of the consideration by the vendee, are by implication of law concurrent acts; that is, to be done at one and the same time.

2. If a part of the consideration in this case was the payment or assumption by David Young, the defendant's intestate, of the plaintiff's debt to the Messrs. Allens, the plaintiffs were not bound to make a deed until David Young, or his representatives, performed or were ready to perform this part of the consideration.

3. If the act or omission of one party renders performance by the other party naturally or legally impossible, the latter is excus-

[Young v. Stone.]

ed from performance, and his rights as against the other party are the same as if he had performed.

4. The sale of the Torrey Mill property by the sheriff renders it legally impossible for plaintiffs to convey it to David Young or his representatives; and as such sale took place by reason of the non-payment of plaintiff's debt to the Allens, if it was the duty of David Young to have paid plaintiff's debt to the Allens, his omission of a duty was the occasion of such legal impossibility, and places the plaintiffs in the same position as if they had performed or tendered performance.

Defendant's points:

·1. That the plaintiffs cannot recover in this case unless they have shown that prior to the sale under execution they were able to make good title, free of defects, to all the lands comprised in the contract of sale; and the evidence does not prove such ability.

2. That if the jury find that defendant's intestate, in his original contract with the plaintiffs, agreed to assume upon himself the payment of said bond and mortgage, and relieve the plaintiffs therefrom, without defining the time at which it should be done, upon consideration that the lands comprised in the contract of sale should be made over to him, and he should have a deed therefor without mention of time at which it should be made, the promises were mutual and dependent, and unless performance was subsequently waived neither party could sustain an action against the other until tender or offer of performance on his part. And if plaintiffs tendered no deed before the sale under execution, which put it out of the power of plaintiffs to perform on their part, the present action cannot be sustained.

3. That if the jury believe that said defendant's intestate agreed with plaintiffs to make an arrangement with the Allens to pay said bond and mortgage, and that said intestate actually did make said arrangement with the Allens to pay at a future day; and that, in consideration thereof, plaintiffs agreed to make a deed to defendants, either generally or on the first of the then next June, on which the said plaintiffs should receive $1500, said defendant's intestate was not bound for the performance thereof if the deed was not duly executed and tendered, or if defects existed in the title unremoved. And defective acknowledgments of grantors before unauthorized persons in the State of New York, and of *femes covert*, are defects in title; as also the want of the deed subsequently executed under date of 15th November 1839, of Catharine Jackson and her daughter Mary and husband, to Stone & Arnold, for a part of said land.

4. That if the jury believe that an agreement was made before the sale under execution between the purchasers under said sale, and the attorney of the Allens, who was authorized by them to collect the money, that if the property should be bid in by said pur-

[Young v. Stone.]

chasers, or by said attorney, at a less sum than the purchase money due, said purchasers would nevertheless pay the full amount of debt, interest and costs, for said property, and the said purchasers have actually paid a part and secured the said attorney for the residue of said debt, interest and costs, then plaintiffs cannot recover of defendants the difference between the amount of bid and the full amount of debt, interest and costs.

The court answered the plaintiffs' points in the affirmative; and thus instructed the jury in answer to the points put by the defendants.

1. That their answer to this point must of necessity be connected with the evidence of what the contract was. If the contract required it, then the plaintiffs ought to have been in a situation to convey a perfect title before the sale on the judgment; but if David Young assumed in an unconditional manner to pay the Allen debt and take it upon himself, or to get his title under it, then he could not require a performance on the part of the plaintiffs without offering to pay the balance due to them. With this explanation this point is answered in the affirmative.

The court answer the second point in the affirmative.

The third point the court answer in the affirmative, with this explanation. It appears by the evidence that plaintiffs took from Allens a covenant for perfecting their title. On the 6th of June 1839, Allens entered their judgment. At the next term of the court plaintiffs obtained a rule to show cause, and under the operation of that rule the defects in the title were supposed to have been arranged, and the deed of 15th November was given. No allegation of any defect in title appears to have been made until here in court, after the title was all swept away by the sale on the judgment.

The fourth point the court answer, that if the plaintiffs are entitled to recover, they are entitled to the amount of the contract, deducting the $500 paid on its execution and the amount paid on their judgment. The evidence upon which this point is raised is that given by Amzi Fuller, Esq., and R. W. Corwin. This is all the evidence bearing upon the point, and the court cannot say, under this evidence, that anything more than the proceeds of the sale can be applied to the payment of the judgment. It may be in this case, as it often is, very hard that the property should be sacrified at sheriff's sale, but it is an every-day occurrence. There is no rule of law which compels a plaintiff to account upon a judgment, under which he is a purchaser, for the sales he may afterwards make of the property. Nor is there any rule which prevents his making a contingent or conditional sale upon the prospect and expectation of his becoming a purchaser under his judgment of the sheriff. If he do nothing to render the sale a fraud upon the defendants or to hinder purchasers from bidding, his bargains and arrangements cannot be made applicable to the judgment.

[Young v. Stone.]

With these explanations and directions the court answer this point in the negative.

*Wheeler* and *Donnel*, for plaintiffs in error.
*Fuller*, for defendants in error.

The opinion of the Court was delivered by

SERGEANT, J.—In one point, and one only, do we think there is an error in the opinion of the court below; and that is, in the instruction to the jury, that nothing but the amount of the sheriff's sale could be applied to the payment of the judgment of the Allens. The principles of justice and equity, as well as of sound policy, require the contrary. The Allens holding a mortgage and judgment against the property, undertake to treat it as theirs, fix a price on it, and from the control which their levy and execution gave them, may be deemed, *pro hac vice*, the owners of the property. By their attorney, Fuller, they contract with certain persons to sell it for $3675. The sheriff's sale takes place under and subject to this contract, and in performance of it, and is, in fact, but a means adopted by the parties for passing the title devested of liens, a mode of conveyance by legal process and matter of record. The sale is afterwards effected for the price thus agreed on, and the money paid, or secured to be paid to the Allens. It would be a perversion of terms to call such a proceeding, as between the parties, a mere ordinary sheriff's sale, in which the price bid is the real purchase money. It was not left to the ordinary course of the law; it was, in effect, a private sale by the creditor, through the medium of a sheriff's deed. Yet, though sold in reality for $3675, and that price received by the Allens as the consideration money, the plaintiffs' attorney takes an assignment to himself of the judgment, and claims the difference between that and the nominal sum (for it was no more) bid for it at the public sale. The plaintiffs' attorney and the plaintiffs are but one; any transaction by the attorney in that capacity is the transaction of his clients, and it is difficult to understand how a plaintiff can receive from the sale of the defendant's property, by the use of legal process, the full amount of his debt, interest and costs, and yet pretend to claim a large balance under an assignment from himself. Considered also on the ground of policy, it would be dangerous to permit such arrangements to be made, and they might prove the means of oppression on unfortunate debtors. Their tendency is to make it the interest of the plaintiff and his attorney to contrive it so that the property shall sell at the sheriff's sale as low as possible, in order that they may realize a larger profit. Bidders may be discouraged by giving it to be understood privately that the property will not be suffered to go under the price agreed upon. It is true, there is no proof here of this; nor is it easy afterwards to find proof where it has been done.

IV. — 7　　　　　E .

[Young v. Stone.]

The safest course is a preventive one; to take away all temptation to make a sheriff's sale an opportunity to the plaintiff to speculate on the distresses of the debtor, by bringing about a public sale at low prices, the plaintiff being secure in the meanwhile in the receipt of his debt by a secret agreement with a purchaser. It is wise to keep official sales free from previous arrangements and negotiations between the plaintiff and the purchaser that would unduly control or affect them, and give any of the parties an advantage. For these reasons, we think the defendants, Youngs, were entitled to a credit for the $3675, and that in this respect the court below erred.

As to the other errors assigned, the main point in the case is very properly stated by the court below to be, whether the defendants were in default in not performing their part of the agreement, in consequence of which the sale took place under the judgment. If the agreement was to pay off the mortgage, or to cause it to be released or arranged to the satisfaction of the mortgagee, so as to prevent its being levied on the property, it is clear the defendants failed to fulfil their agreement. And that this was their agreement would seem to be pretty clearly shown by the evidence, and appears to be found by the jury under the charge of the court; and is, moreover, an agreement naturally flowing in equity, from the very circumstance of the mortgage being part of the consideration money, and therefore an encumbrance which the purchaser is under an obligation to indemnify the vendor against. See *Trevor* v. *Perkins*, (5 *Whart.* 244). Certainly the plaintiff would not be bound to tender a deed to the defendants so long as this most material act on the part of the defendants remained unperformed, and the property continued in jeopardy. And even if this had been done, still there remained the payment of the $1500, which, it would seem from the testimony of Wilder, the only witness who speaks with any precision on the subject, was to be simultaneous with the tender of the deed; so that the defendants could not demand a deed till this money was tendered. If the defendants failed in either of these, it was not incumbent on the plaintiffs to make them a deed. It seems plain, however, that it was in consequence of the defendants not providing for the mortgage that the Allen debt was enforced by execution and the property swept away. I am of opinion that the court charged correctly that if the contract was as the plaintiff alleged, he was not, under the circumstances, bound to tender a deed before the sheriff's sale; and after that, it was nugatory, as his title was altogether devested.

The adjustment of the set-off claimed by the plaintiffs against the Allens, and the alleged defect in the acknowledgment of the parties to one of the title deeds, seem to have had little or no influence on the catastrophe that resulted. These questions were brought before the Court of Common Pleas, in the suit by the

[Young v. Stone.]

Allens, by the affidavit of the plaintiffs on the 19th of August 1839, and, as appears by the charge of the court, were disposed of by the ascertainment of the balance and the execution of a deed on the 15th of November 1839, prior to the sheriff's sale. This concluded the plaintiffs as to their claim to a deduction from the mortgage on these accounts, and enabled the defendants to know whether they were to pay the Allens the amount of their judgment or not; which was the matter material to them. Then if they agreed to take on themselves the arrangement with the Allens, they were bound to attend to this suit and take notice of its result. It would seem they left it to the plaintiffs, and no evidence is given of any collusion or neglect on the part of the plaintiffs in relation to the suit by the Allens against them. If this decision did not dispose of the objection made to the title, we think the defendants should show that they had put themselves in a situation to ask for a title, when, perhaps, any defect might be removed, or if not removed compensation be allowed for it. But in truth these seem to be minor matters. The real cause of the loss that ensued appears not to be attributable to them, but solely to the failure of the defendants to pay off the mortgage, or arrange it so as to secure the property from being sacrificed.

It is objected that the court below erred in treating this as a suit brought to enforce a specific performance of the contract; whereas it was in effect but a parol contract, and the declaration does not sufficiently state the part performance of such parol contract to make it a case in which equity would execute it. For although it states that the defendants entered into possession, it does not state it was done in pursuance of the contract. Considering, however, that the declaration says, that after making the agreement for this property the plaintiffs surrendered the possession of it to the defendants, and they entered and took possession, we think the verdict cures an insufficiency of this kind, and that after verdict the inference that the entry was in pursuance of the agreement, may be fairly drawn from the whole tenor of the pleadings, and the proof that must be presumed to have been given.

As to the damages, the rule is properly laid down by the court below, that the plaintiff is entitled to the difference between the amount of purchase money contracted to be paid and that which the plaintiffs received from the sale, added to the $500 cash paid to the plaintiffs, with interest from the time of the sale.

Judgment reversed, and *venire facias de novo* awarded.