## Frederick Lennig's Estate—Agnes Lennig's Appeal.

52  135
174  480

52      135
f  36 SC ¹280

1. Land mortgaged is but the pledge for the debt, the primary liability to redeem it, rests upon the personal estate.

2. An heir, devisee or purchaser taking land charged with a mortgage does not *ipso facto* make it his own debt, or subject his personalty to its payment: even if he gives his own bond or covenant for the payment, if this be done only as a new security or as auxiliary, or merely to relieve the land from the pressure of the encumbrance.

3. Where the heir or devisee makes the debt his own, or a purchaser assumes it as part of the price, the personal estate must go in relief of the realty. .

4. A widow elected to take against her husband's will : his real estate was encumbered by a mortgage created by himself, and one which he had assumed to pay as part of his purchase-money : the executors paid both mortgages from the personalty. *Held*, that she could not compel the realty to reimburse her.

APPEAL from the decree of the Orphans' Court of *Philadelphia*, confirming the report of the auditor on the account of the executors, &c., of Frederick Lennig, deceased.

Agnes Lennig, the appellant, is the widow of the decedent. The decedent left a will, by which he authorized his executors to sell his real estate, and divide all his estate between his widow and nine children. The widow elected to take under the intestate

[Lennig's Estate.]

laws. The testator at the time of his death owned a house and lot on Walnut street, and one on Poplar street, Philadelphia. The Walnut street house was subject to a mortgage of $15,000, which was given by the testator himself. The Poplar street house had been bought by the testator subject to two mortgages, one of which for $25,000 remained unpaid at his death.

The deed to the testator, dated February 17th 1863, states the consideration thus: " in consideration of $20,000 lawful money of the United States, paid, &c., and of the *assumption* of the said Frederick Lennig of the two mortgages herein afterwards particularly mentioned, being altogether the sum of $57,000." The *habendum* of said deed grants, subject to the lien of said mortgages; and the receipt for the consideration-money, is as follows: " Received, &c., $20,000, the cash consideration therein mentioned, which, together with the assumption of the mortgage-debts of $12,000 and $25,000, is the full consideration of $57,000 above mentioned."

The Walnut street property was sold by the executors; they paid the mortgage of $15,000, and secured one-third of the purchase-money on the property for the widow's dower. They paid the other mortgage out of the personal estate, and took an assignment of it—they ask credit for both of these sums in their account. No demand had been made by the holders for payment of either of the mortgages. The auditor allowed credit for both sums. Mrs. Lennig filed exceptions to the report for allowing these credits, " and charging one-third part thereof to the share of the personal estate of the exceptant." The report was confirmed by the Orphans' Court, which was the error assigned.

*H. M. Phillips*, for the appellant.—All the interest of the testator in the land was his equity of redemption. The rule contended for might in a given case take all a testator's personal estate to pay the mortgages, and leave the widow her dower in unproductive real estate. Under the Act of Assembly the widow's interest in her husband's lands is but an annuity in nature of a rent-charge. Power *v.* Power, 7 Watts 212; Asay *v.* Hoover, 5 Barr 35; Hoff's Appeal, 12 Harris 200; Bell *v.* Bell, 8 Casey 309; Woodward's Appeal, 2 Wright 320, seem to sustain the appellant. O'Neil *v.* Mead, 1 P. Wms. 693; Lutkins *v.* Lee, Cases Temp. Talbot 3; Hamilton *v.* Morly, 2 Ves. Jr. 65; Ruston *v.* Ruston, 2 Dall. 243; s. c. 2 Yeates 54; Thompson *v.* Morrow, 5 S. & R. 289; Benner *v.* Evans, 3 Penna. Rep. 457; Shirtz *v.* Shirtz, 5 Watts 259; Hoover *v.* Hoover, 5 Barr 351; Rider *v.* Wager, 2 P. Wms. 325; Dixon on Subrogation 159, 160–1; Tipping *v.* Tipping, 1 P. Wms. 729.

The *widow* and legatees have a right to stand in the room of the mortgagee, and have as much out of the real estate as he had

out of the personal: Lutkins *v*. Lee, *supra ;* Mollan *v*. Griffith, 3 Paige 405; Culpepper *v*. Aston, 2 Cases in Chan. 115.

Neither mortgage should be paid from the personal estate, but the $25,000 mortgage especially should not, because it is nothing more than a covenant of exoneration to the mortgagor; the *habendum* creates no liability: Shoenberger's Executors *v*. Hay, 4 Wright 132.

*H. Wharton*, for appellees.—Personalty must be exhausted to pay the debts before the real estate can be resorted to, and a mortgage-debt is a personal debt. The $15,000 was the testator's own debt from the first. The $25,000 became his, because he expressly assumed its payment. If it had not been paid because there was no demand, the executors would have been bound to retain enough of the personal estate to meet it when demanded: Woodward's Appeal, 2 Wright 320. The very point here was decided in Hoff's Appeal, 12 Harris 200.

The opinion of the court was delivered, March 26th 1866, by

AGNEW, J.—The executors of Frederick Lennig, deceased, were allowed credit on their account for the payment of certain mortgages out of the personal estate. Mrs. Lennig, who renounced the will, and took her share of the real and personal estate at law, objected to this allowance, and has appealed from it. The will of Mr. Lennig has not been laid before us, and Mrs. Lennig alone appears to object to the payment. We must conclude, therefore, there was nothing in the will to cast the payment upon the realty; and the question is, whether equity will, in favour of the widow, now charge the land with the mortgage-debts to the extent of the payment made out of the widow's share of the personalty. If it can be done, it must be because the land is primarily charged.

Beginning therefore with the postulate, that nothing in the will changes the general rule which charges the personal estate as the primary fund, the questions presented are, the nature of Mrs. Lennig's interest in her husband's estate, and the character of the mortgage-debts.

The 11th section of the law of April 8th 1833, relating to wills, having provided that a devise or bequest by a husband should be taken to be in lieu of dower, declared that nothing therein contained should deprive her of her choice, either of dower or of the property devised or bequeathed to her. Under this act, by refusing to accept under the will she lost her right to the personalty, and was cast exclusively on her dower at common law: Hinnershitz *v*. Barnhard's Executors, 1 Harris 518. To remedy this the 11th section of the Act of April 1848 enabled her to take her choice of the bequest or devise, "or her share of the personal estate under the intestate laws aforesaid." The claim of Mrs.

[Lennig's Estate.]

Lennig is, therefore, under the intestate law by the express terms of the act, and the will is *pro tanto* revoked.

Standing now upon the intestate law, her share of the personalty is subject to the payment of her husband's debts (the will making no other provision), and if it should all be required for their payment she cannot call upon the realty to reimburse her. The power to elect carries with it a consideration of the advantage and disadvantage of the election in either way; and it must be presumed after she chose to renounce the provision under the will she deemed her dower in the realty lightened of the mortgage-debts by payment out of the personalty; and her share of the personalty diminished by the sum taken to pay the mortgage, a better provision than that made for her by the will.

This brings us to consider the mortgages. A mortgage is but a security for a debt, the estate in the land remaining in the mortgagor, and the mortgagee having no estate whatever except the mere legal title as the means of enforcing payment.

His assignment of the mortgage carries but a personal interest to which the administrator of the assignee succeeds, and not the heir. And the mortgagee cannot convey the estate itself, nor can it be sold at sheriff's sale as his: Rickert *v.* Madeira, 1 Rawle 328; Asay *v.* Hoover, 5 Barr 35; Clawson's Appeal, 10 Harris 363. When encumbered by the mortgagor for his own debt, the land is but a pledge or security for its payment, and the primary liability rests in equity upon the personal estate to redeem it, and this even where no bond or covenant for the payment accompanies the pledge. The principle on which equity acts is, that the money has gone to increase the personal estate: Ram on Assets, &c., 357, cap. 29, § 1. The mortgage of $15,000 was therefore a personal charge to be paid out of the personalty, and the credit must be sustained.

The mortgage of $25,000 on the property at Broad and Poplar stands on a different footing, in its origin, being an encumbrance already existing when Mr. Lennig purchased. An heir, devisee or purchaser taking land already charged with a mortgage, does not *ipso facto* make the debt his own, or subject his personalty in equity to its payment.

There are many English cases sustaining this to be found collected by Mr. Ram in his treatise on Assets, Debts and Encumbrances, cap. 29, pp. 360–3. The same rule prevails even where the party so taking the land gives his own bond or covenant for the payment of the encumbrance, if it be done only as a new security, or as auxiliary, or merely to relieve the land from the pressure of the encumbrance. In such cases equity looks upon the land as still the principal security, and the undertaking of the heir, or devisee, or purchaser as merely collateral; and it will compel payment out of the land in relief of the personalty:

[Lennig's Estate.]

Evelyn v. Evelyn, 2 Peere Williams 664 ; Coventry v. Earl of Coventry, Id. 222; Butler v. Butler, 5 Ves. 535; Shafts v. Shafts, 1 Cox 207. But when the heir or devisee makes the mortgage-debt his own, as by a new mortgage to the mortgagee ; or when a purchaser assumes the debt as a part of the price of his purchase and thus makes it his own, the rule is different, and the personal estate of the heir, devisee or purchaser must go in relief of the realty : Ram 361 ; Woods v. Huntingford, 3 Ves. 129 ; Waring v. Ward, 7 Id. 332; Earl of Oxford v. Lady Rodney, 14 Id. 417. In this state we have the case of Hoff's Appeal, 12 Harris 200, in which the subject is fully discussed by the present chief justice, with a very full reference to authorities. It is there held, that when the purchaser paid the full price of the land, by including the encumbrances which he assumed to pay as the entire consideration of the premises, the purchaser made the debt his own, both as it regards the mortgagor and the mortgagee, and that an action would lie for the mortgagee against the purchaser for the amount of his encumbrance retained out of the price he agreed to pay. And it was decided that the residue of the personal estate not specifically bequeathed was liable to pay the encumbrance of the mortgage in relief of the realty. The foundation of the equity is there held to be, that the personalty was increased to this extent by withholding so much of the price.

In the case before us, the evidence is very clear that the testator had purchased the property at Broad and Poplar streets for the price of $57,000, which sum the written contract stated included the two mortgages of $12,000 and $25,000. He also took the property in the deed subject to the payment of the mortgages stated in the consideration to be a part of the price of $57,000, and assumed to be paid by him. The receipt upon this deed was for $20,000 cash, which, with the assumption of the mortgages of $12,000 and $25,000, was the " full consideration of $57,000 above mentioned." Lennig himself paid off the $12,000 mortgage in his lifetime. It is very certain, therefore, that Mr. Lennig made the mortgage-debt of $25,000 his own, and charged it thereby upon his personal estate. That a personal liability arose results not only from the decision in Hoff's Appeal, ante, but is the result of other cases : Trevor v. Perkins, 5 Whart. 245 ; Campbell v. Shrum, 3 Watts 60 ; Young v. Stone, 4 W. & S. 45 ; Blank v. German, 5 Id. 36 ; Woodward's Appeal, 2 Wright 322.

An analogy is to be found in that class of cases where a devisee accepts land devised to him charged with the payment of legacies ; a personal responsibility for the encumbrance attaching not only to himself but to his assigns, who take the estate subject to the charge ; and also to a personal liability to pay during the privity of their estate : Asay v. Hoover, 5 Barr 351 ; Mohler's Appeal,

[Lennig's Estate.]

8 Id. 26 ; Shaffer's Appeal, Id. 38 ; Gibson's Appeal, 1 Casey 191; Swope's Appeal, 3 Id. 58. The analogy is not impaired by the remarks of Lowrie, J., in Hallowell's Estate, 11 Harris 233. He does not deny that the acceptance of the devise creates a personal liability for the charge, but asserts that it may be controlled by the primary intention of the testator on a deficiency of assets appearing, in order to bring the legatees into proportional contribution with the devisees. Upon the whole case we therefore conclude, that the personal estate of the testator was primarily charged with the payment of the mortgages, and that there is nothing in the relation of the widow, who cast herself upon the provision which the law makes for her, with an imputed knowledge of the consequences, to compel the realty to reimburse her to the extent of her share of the personalty taken to make the payment.

The decree of the Orphans' Court is affirmed with costs, which the appellant is ordered to pay.