In the Matter of **HOLIDAY LODGE, INC.,** Debtor.

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF CHICAGO,** a United States corporation, Appellant,

v.

**HOLIDAY LODGE, INC.,** an Illinois corporation, **Nathan J. Levin, et al.,** Petitioning Creditors and **Gerald Grace,** Receiver, Appellees.

No. 13536.

United States Court of Appeals
Seventh Circuit.

March 13, 1962.

Rehearing Denied En Banc
April 19, 1962.

Thomas E. Moran, Edward Rothbart, Joseph Stein, Chicago, Ill., for appellant. Rothbart, Stein & Moran, Chicago, Ill., of counsel.

Carroll A. Teller, Morris S. Bromberg, Jack Arnold Welfeld, Chicago, Ill., for appellees. Teller, Levit & Silvertrust, Chicago, Ill., of counsel.

Before DUFFY, SCHNACKENBERG and KILEY, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

First Federal Savings and Loan Association of Chicago,[1] a United States corporation, appealed from an order of the district court entered July 31, 1961, *continuing* a restraining order entered against it on February 3, 1961, in a Chapter XI proceeding, 11 U.S.C.A. § 714, initiated by an involuntary petition in bankruptcy filed by the unsecured creditors of Holiday Lodge, Inc., an Illinois corporation, debtor, on January 30, 1961.

There does not seem to be any controversy about the facts which we now state.

Prior to November 15, 1958, Morris S. Bromberg and his wife, owners of vacant real estate, organized 4800 Marine Drive, Inc., an Illinois corporation, of which they and his brother were the sole shareholders, and conveyed the real estate to that corporation. Thereupon the Association made a first mortgage loan to the corporation for $750,000, amortized over a 15-year period, evidenced by a note and a mortgage covering said real estate, payable in monthly installments, $6431 of principal and interest, beginning January 30, 1960, and the corporation agreed to deposit ½th of the estimated annual real estate taxes with the Association. The mortgagor also assigned to the Association all leases and the rents, issues and profits.

At the same time Bromberg organized Holiday Lodge, Inc., an Illinois corporation, debtor herein, which took a lease of the premises from 4800 Marine Drive Inc. for 25 years from May 1, 1959, upon rentals which varied according to an agreed schedule. The lease provided that it was subordinated to the lien of any mortgage upon the premises and all advances made on the security thereof. The lease granted an option to debtor to purchase the leased premises at certain times and for certain amounts.

A motel was constructed thereon and commenced operation in December, 1959. Financial problems arose in meeting the mortgage payments. The debtor's operations did not produce sufficient income to pay the rent, taxes and required mortgage payments, amounting in all to $10,300 a month. Partial payments were made on the mortgage but only sufficient to make the payments through June, 1960. Bromberg discussed with the Association these financial problems. By deed recorded October 13, 1960, the mortgagor quitclaimed its interest in the premises to Central National Bank in Chicago, as trustee. On December 2, 1960, the Association advised the mortgagor that it had elected to accelerate the maturity of its note and declared the entire balance of $750,676.73 due. The board of directors of the Association on December 13, 1960 authorized foreclosure of the mortgage. Meanwhile, creditors of the debtor met to discuss its problems, when the Association's representatives attended. However, in January, 1961 the Association informed Bromberg that unless brought to a current status by the end of January, its mortgage would be foreclosed.

On January 30, 1961 an involuntary petition was filed against the debtor and there was a general order of reference.

On February 1, 1961, petitioning creditors filed a motion to adjudicate debtor a bankrupt and to restrain the Association from taking any legal action or commencing any proceeding to foreclose the

---

1. Hereinafter called the Association.

trust deed executed by the "alleged bankrupt and secured on its realty" located at 4800 Marine Drive, Chicago, Illinois until further order of the court. Such a restraining order was entered on February 3, 1961.

On the same day, the debtor filed a petition for an arrangement under Chapter XI, and the debtor was given authority to operate its business.

On February 15, 1961, the Association filed a petition to vacate the restraining order and for leave to join the debtor as a defendant in its proposed foreclosure.

Numerous hearings followed before a referee until April 12, 1961 when, no plan or arrangement having been filed by the debtor, the referee entered a rule to show cause why the proceedings should not be dismissed.

On April 14, 1961 debtor's petition to make an arrangement was dismissed, an order of adjudication was entered and a receiver appointed. On May 8, 1961 the referee vacated the restraining order of February 3, 1961. This was followed by the filing of a foreclosure suit by the Association in the Superior Court of Cook County, Illinois.

On its review of the order of May 8, 1961, the court on July 18, 1961 commenced a *de novo* hearing on the petition to vacate the restraining order of February 3, 1961. On July 31, 1961, the court made findings of fact and conclusions of law, entered an order reversing the referee's orders, except the one appointing a receiver, and referred the case to another referee, and specifically continued the restraining order against the Association and denied its motion to vacate said order. This appeal followed.

On debtor's petition the district court, on July 31, 1961, reviewed these proceedings before the referee and the receiver was continued in possession, where he still continues to operate the business of debtor.

Debtor in its brief in this court cites as significant the district court's statement at the hearing on July 31, 1961:

"I would find that * * * an immediate sale by the owner of the first mortgage would do irreparable injury to the creditors, to the owner of the equity and other creditors, and it would bring unjust enrichment to the First Federal, * * * "

■ 1. The Association states in these words two issues as it sees them:

Does the court in a Chapter XI proceeding have the power to restrain a mortgagee from foreclosing a mortgage on real estate which is the subject of a lease to the debtor, which lease is subordinate to the mortgage?

Is the refusal to vacate an order restraining foreclosure of such a mortgage an abuse of discretion when such refusal is made six months after entry of the restraining order during which period the debtor lessee has paid no rent, its business has not earned sufficient to pay current rent, and mortgagee has been paid nothing on its mortgage?

In response, debtor states:

In view of the fact that appellant has never (to this very day), attempted to refute the positive findings of the Court that Debtor's property, exclusive of the fee, has a present valuation in excess of $450,000.00 over and above the balance due appellant, and that appellant is more than amply secured, the Court was warranted in refusing to vacate the order restraining appellant from foreclosing its mortgage since such foreclosure would have destroyed any hope of Debtor's rehabilitation within the contemplation of Chapter XI and would have resulted in an *unjust enrichment* to appellant at the expense of Debtor and its unsecured creditors.

Debtor relies on Chapter XI, 11 U.S.C.A. § 714, which provides:

"The court may * * * for cause shown, enjoin or stay until final decree any act or the commencement or continuation of any proceeding to enforce any lien upon the property of a debtor. * * * "

The Association relies upon Brunn v. Wichser, 3 Cir., 75 F.2d 25, and In re Patten Paper Co., 7 Cir., 86 F.2d 761, as recognizing that, in a situation such as the one in the case at bar, the holder of a first mortgage should not be restrained from enforcing the lien of that mortgage against the property therein pledged as security, the first mortgagee having no claim against the second mortgagees and none against their property, that it should not be restrained from enforcing the lien of its first mortgage against the property therein pledged as security unless there is something else in the section [2] which stays that right.

Finding none, the court concluded in Brunn that the extension which the district court had granted the debtors for payment of their debts did not include the first mortgage.

In Patten Paper Co., we said, at 765:

"The District Court had no jurisdiction to restrain state court proceedings to enforce a lien on property that did not belong to the debtor. In re [M. H.] Bekkedal & Sons, Inc. (C.C.A.7) 81 F.2d 337; In re Prudence Co. (C.C.A.2) 82 F.2d 755; In re Adolph Gobel, Inc. (C.C.A.2) 80 F.2d 849."

The applicability of these decisions to the case at bar is emphasized by the circumstances that the first mortgage here constitutes a lien on the property in question superior to debtor's leasehold interest and, to the extent of that lien, the debtor had no interest in the real estate. It took its lease subject to that mortgage lien. That being so, the district court, as a bankruptcy court, had no jurisdiction to restrain a state court proceeding to enforce the Association's lien on the property to the extent that it was superior to any interest belonging to the debtor in that property.

Thus, both literally, according to the language of § 714, and as a matter of equity, the court did not have jurisdiction under this section to grant or continue the restraining order.

The distinction which we make is well-stated in Texas & N. O. R. Co. v. Phillips, 5 Cir., 211 F.2d 419, 420–421, where a trustee in bankruptcy brought a proceeding against a railroad company for specific performance of an option to purchase real property described in a lease for ten years given by the railroad to the bankrupt. The railroad company moved to dismiss the petition for lack of jurisdiction, the referee denied the motion, and the district court affirmed.

The Court of Appeals agreed with the railroad company that the bankruptcy court did not have jurisdiction over the railroad's reversionary interest in the leased premises, recognizing that that interest in property was held adversely to the bankrupt estate. It held that although the trustee in bankruptcy had possession of the tangible property described in the lease, it did not have possession of the railroad's reversionary interest, and the trustee was not disputing the lessor's title by seeking to acquire it. This was the reversionary interest of the lessor which arose by operation of the law when the leasehold was carved out of the fee simple title. Such reversion, not being owned by the bankrupt, is in legal contemplation not in possession of the bankruptcy court and it has no jurisdiction thereof.

█ 2. Quite aside from the question of jurisdiction of the district court which we have discussed, the Association contends that the refusal of that court to vacate the restraining order after it had been in effect six months shows an abuse of that court's discretion.

While at one stage of the proceedings the district court seemed to recognize

2. Paragraph (h) of § 74 (11 U.S.C.A. § 202(h)) which provides:
"The terms of an extension proposal may extend the time of payment of either or both unsecured debts and secured debts the security for which is in the actual or constructive possession of the debtor or of the custodian or receiver. * * *"
This section is a forerunner of the section relied on by debtor in this case.

that the debtor had an obligation to submit a plan, because the court so told its lawyer, yet no plan of arrangement or any proposed plan had been submitted when the order appealed from was entered. Under the shelter of the restraining order, counsel for the debtor has continued to express hopes, wholly speculative, which significantly depend upon the continued restraint of the Association from foreclosing on its first mortgage which has legal priority to debtor's lease. Such hopes of debtor, in any event, do not constitute a plan. Even in a case where a plan had been submitted. In re Murel Holding Corporation, 2 Cir., 75 F.2d 941, 942, the court speaking thereof said:

> " * * * its effect is wholly speculative, based upon the expectations of those who have everything to gain and nothing to lose. * * * It does not seem to us that this setting authorized any stay; it should appear that the plan proposed has better hope of success; full details may not be necessary, but there must be some reasonable assurance that a suitable substitute will be offered. No doubt less will be required to hold up the suit for a short time until the debtor shall have a chance to prepare; much depends upon how long he has had already, and upon how much more he demands. But a stay should never be the automatic result of the petition itself, and we cannot see that there was here anything else of substance."

During the protracted proceeding in the district court, before the referee and before the court itself, including a *de novo* hearing, the effect of the court's restraining order was to prevent the Association from resorting to the right of foreclosure to which it was entitled under the law of Illinois. This procedure strongly suggests the applicability of the language of Circuit Judge Murrah, in Chaffee County Fluorspar Corp. v. Athan, 10 Cir., 169 F.2d 448, 450, that the only asset of the debtor hangs by the thread of the stay order.

3. We are not unaware of the natural effect of prolonged interference with a foreclosure proceeding brought by a savings association, such as appellant in this case. It amounts to a freezing of assets, while it is in effect, a condition which is not consistent with that degree of liquidity requisite in any financial organization engaged in the acceptance of investment of the funds of many members of the public.

We hold that under all the circumstances the district court abused its discretion in continuing the restraining order in effect.

For the reasons herein stated, the order of July 31, 1961 continuing the restraining order entered on February 3, 1961, and refusing to vacate that order, is reversed.

Order reversed.

DUFFY, Circuit Judge (concurring).

I agree with the result reached, and concur insofar as the decision rests on the ground that the District Court abused its discretion in continuing the restraining order in effect, under the circumstances of this case.

I do not agree with the statement in the opinion that the District Court did not have jurisdiction to *grant* or continue the restraining order (emphasis supplied), if that means a District Court has no jurisdiction to restrain even temporarily a foreclosure when proceedings under Chapter XI have been instituted.

My understanding of the law is well stated in Remington on Bankruptcy, Volume 9 (1955 Ed.) Sec. 3614, at page 260: "Arrangements under Chapter XI cannot affect the rights of secured creditors * * * But it now appears to be clear * * * that the court has power in a Chapter XI proceeding to exercise its injunctive and stay powers * * * against destructive or unduly damaging suits and foreclosures, at least temporarily and for good cause shown."

The fact that Chapter XI proceedings cannot affect the securities of the first mortgage lien does not preclude the Bankruptcy Court from considering a plan and to restrain a threatened foreclosure while the Court may give consideration to that plan.