**BRUNN et al. v. WICHSER et al.**

No. 5464.

Circuit Court of Appeals, Third Circuit.

Dec. 19, 1934.

John B. Nicklas, Jr., and McCrady, Mc-Clure, Nicklas & Hirschfield, all of Pittsburgh, Pa., for appellants.

Walter P. Rainbow, of Pittsburgh, Pa., for appellee Wichser.

Wm. H. Markus, of Pittsburgh, Pa., for appellee Concord Premium Building & Loan Ass'n.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

Partners, trading as Ingomar Lumber Company and engaged, among other things, in the business of erecting and selling houses in land development operations, hold many second mortgages covering properties against which other persons hold first mortgages. Being in trouble in consequence of non-payment of rent by tenants, defaults in payment of interest and installments of principal by mortgagors and an accumulation of unpaid taxes and therefore being "unable to meet (their) debts as they mature," the holders of the second mortgages resorted to section 74 of the Bankruptcy Act, emergency legislation, for an extension of time within which to pay their debts and thereby prevent divestiture of the second mortgages by foreclosure of the first. 47 Stat. 1467 (11 USCA § 202). On a petition, formally complying with the section, the District Court took jurisdiction of the case and granted an extension to July 1, 1935. The extension agreement contains no provision for the benefit of the holders of the senior mortgages other than an engagement that moneys received from rents and installment payments should be applied to taxes, "interest on prior mortgages," insurance premiums and other charges "with a view of preserving the security of (the junior) mortgages" for the duration of the extension.

Conceiving themselves outside the extension proceedings, Louis J. Wichser, administrator of holders of a first mortgage against one property, and Concord Premium Building & Loan Association, holder of three first mortgages against other properties, instituted foreclosure proceedings which, on petitions filed by the original petitioners (second mortgagees), the court stayed by restraining orders. Pending the restraining orders, the court referred the case to a referee for testimony and report. Later, on the petitioners' exceptions to the referee's report, it dismissed the exceptions and, acting on the referee's recommendations, refused injunctions against foreclosure by the first mortgagees, dissolved the restraining orders theretofore granted and dismissed the petitions. The petitioners appealed.

Whether or not the learned court was right in refusing to enjoin foreclosure of the first mortgages depends primarily on the words of the statute which define its purpose, operation and scope. While enacted by the Congress within powers conferred by clause 4, § 8, of article 1 of the Constitution, and therefore incorporated in the Bankruptcy Act, it is plain that the relief afforded by the amendment (section 74) is not limited to one technically in bankruptcy but extends to one who, being in debt, may be saved from bankruptcy if afforded an opportunity to pay his debts. He is therefore given the softer name of "debtor." In singling out the kind of debtor entitled to extension relief, the section provides that the term "debt" shall include "all claims of whatever character against the debtor or his property," and the term "creditor" shall include "all holders of claims of whatever character against the debtor or his property." Section 74 (a) of the act (11 USCA § 202 (a).

The appellants (second mortgagees) say they are such debtors and that the appellees (first mortgagees) are such creditors. With this we can not agree. It is perfectly clear that the first mortgagees have no "claims" against the second mortgagees. There is no contractual relation, express or implied, between them out of which a "debt" may arise. They are strangers in law, free to move against their securities unless stayed by the statute, which the appellants say is precisely what happened.

Evidently being doubtful that the relation of debtor and creditor between the second and first mortgagees could be established, the appellants rely mainly on those parts of the section, defining debtor and creditor, which refer to claims "against the debtor or his property" and take the position that the premises covered by their second mortgages are their property and, that being so, the case comes within the statute, and the first mortgagees, though not having claims against the debtors themselves, nevertheless have claims against their property and must await the end of the extension period to collect them by foreclosure. The case therefore resolves itself into the question whether or not the first mortgagees have claims against the property of the petitioning debtors. That depends on whether or not the premises covered by the mortgages of both classes are the "property" of the "debtors," which in turn depends on the character of a mortgage under the law of the Commonwealth of Pennsylvania.

As the appellants (second mortgagees) read the law of Pennsylvania, the owner, by mortgage, conveys the legal title of the land to the mortgagee with the right on his part to possess the property and with a right of action in ejectment to obtain possession, with, however, a defeasance clause ensuring re-conveyance in the event of payment of the debt. In short, as the appellants construe the law of Pennsylvania, a mortgage conveys an estate in land and, on the conveyance, the property becomes that of the mortgagee. Britton's Appeal, 45 Pa. 172; Tryon v. Munson, 77 Pa. 250; Nerpel's Appeal, 91 Pa. 334. If this is the Pennsylvania law it is interesting to note that it applies equally to a first mortgagee to whom, by like reasoning, conveyance of the property is first made under his first mortgage. Where, then, stands a second mortgagee, we are not informed. However, there are cases in Pennsylvania which seemingly support the appellants' position where only one mortgage is involved, yet there are other cases in that Commonwealth which hold: "A mortgage is but a security for a debt, the estate in the land remaining in the mortgagor, and the mortgagee having no estate whatever except the mere legal title as the means of enforcing payment," Lennig's Estate, 52 Pa. 135, 138; "the mortgage transferred no title; it created only a lien upon the property," Cleveland, Etc., R. R. Co. v. Pennsylvania, 15 Wall. 300, 322, 21 L. Ed. 179; "in Pennsylvania a mortgage is, both in law and in equity, only a security for the payment of money, and passes no title to the land. The mortgagor is the owner of the land," Shields v. Pittsburgh, 252 Pa. 74, 76, 97 A. 124, 125. Judge McPherson, late of this court, after reviewing the Pennsylvania authorities on the subject in Re Lukens (D. C.) 138 F. 188, 191, said: "It may perhaps be safely concluded that a mortgage in Pennsylvania is held to be either an estate or a lien, as the equities of the particular case may require, but that the general rule holds it to be a lien only, and not an estate."

The Supreme Court of Pennsylvania, recognizing these cases, proceeded with deliberation to set at rest their differences by a pronouncement in Harper v. Consolidated Rubber Company, 284 Pa. 444, 131 A. 356, 358, as follows:

"Prof. William H. Lloyd, in a recently published article (73 U. of P. Law Rev. 43), discusses all of the leading Pennsylvania cases on the subject in hand, and states the

conclusion that, while many of our decisions are difficult, if not impossible, to be reconciled (a view which seems to be supported by a reading of the cases), the title to the mortgaged premises may be accounted in the mortgagee 'as between the parties' to the transaction represented by the mortgage, 'so far as it is necessary to render the instrument effective as a security,' but 'as to all other persons (with some special exceptions) the mortgagor is regarded as the owner, and the mortgage as a mere incumbrance and accessory to the debt,' which summarizes the predominant effect of our decisions."

We regard this state case interpreting state law as controlling upon this federal court. Finding no equities that take the second mortgages in the instant case out of the general rule, we hold that the premises which they cover were not conveyed to and therefore are not the "property" of the appellants (second mortgagees). It follows that the appellees (first mortgagees), having no claims against the appellants (second mortgagees), and none against their property, should not be restrained from enforcing the lien of their mortgages against the property therein pledged as security for debts unless there is something else in the section which stays that right. The appellants say there is and point to paragraph (h) of section 74 of the act (11 USCA § 202 (h) which provides: "The terms of an extension proposal may extend the time of payment of either or both unsecured debts and secured debts the security for which is in the actual or constructive possession of the debtor or of the custodian or receiver. * * *"

Anticipating, perhaps, a ruling that they are not, by force of their mortgages, in "actual" possession of the properties, the appellants (second mortgagees) maintain they are in "constructive" possession of the securities (the land) by reason of the fact that with their mortgages on record and the mortgagors in default, they were in position at any time to take actual possession of the premises or otherwise exercise control over them.

If this contention be true in respect to the second mortgagees, it is equally and primarily true in respect to the first mortgagees and there would arise an odd situation where parties with conflicting interests would each be in constructive possession of the same properties.

Although one of the properties in question was conveyed to the appellants (cum onere a first mortgage) after the extension had been granted, we hold, particularly as to that one property by force of the provision of section 74 (m) of the act (11 USCA § 202 (m), that "rights and liabilities of creditors, and of all persons with respect to the property of the debtor" are, in harmony with like proceedings on a voluntary petition in bankruptcy, to be determined according to their status on the date the original petition for extension was filed, and hold generally in respect to the other three properties that the appellant-debtors do not have constructive possession of them within the terms of the section. In re Landquist et al. (C. C. A.) 70 F.(2d) 929, 935, 936. It follows that the extension which the court granted the debtors for payment of their debts does not include the first mortgages in question.

The order of the District Court is affirmed.