In re Fidelity Mortgage Investors,
Debtor.

FIDELITY MORTGAGE INVESTORS,
Applicant-Appellee,

v.

CAMELIA BUILDERS, INC., et al.,
Respondents-Appellants.

No. 1028, Docket 76–5007.

United States Court of Appeals,
Second Circuit.

Argued May 13, 1976.

Decided Sept. 3, 1976.

Rehearing Denied Nov. 5, 1976.

Certiorari Denied Feb. 22, 1977.   See
97 S.Ct. 1107.

Jeffery H. Hubbard, Houston, Tex., for respondents-appellants.

Michael Cook, New York City (Weil, Gotshal & Manges, Richard P. Krasnow, Philip H. Kalban, New York City, of counsel), for applicant-appellee.

Before SMITH, MANSFIELD and VAN GRAAFEILAND, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Fidelity Mortgage Investors (hereinafter, "FMI"), is a real estate investment trust organized under the laws of Massachusetts.[1] Like many other real estate investment trusts, FMI has not weathered the recent recession. As a result, FMI has been forced to file for reorganization under Chapter XI of the federal Bankruptcy Act, 11 U.S.C. § 701, *et seq.* This appeal stems from events surrounding that reorganization.

Camelia Builders, Inc. (hereinafter, "Camelia") and Farnale, Inc. (hereinafter, "Farnale"), organized into a joint venture, have acted as general contractors for the construction of eighty condominium units in Jackson, Mississippi. FMI granted a construction loan to the developer of that condominium project.

When the developer of the Jackson condominium project ran into financial diffi-culties, FMI, Camelia and Farnale all found themselves with creditor interests in the partially-completed units. FMI, in return for the construction loan, had received a first deed of trust on the condominium project and the land on which it was to be built. Camelia and Farnale possessed materialmen's and mechanic's liens by virtue of the labor and supplies they had furnished for the partially-completed condominiums.

Shortly after the financial problems of the Jackson condominium developer came to fruition, FMI was forced to confront the precariousness of its own financial situation. Accordingly, on January 30, 1975, FMI filed for Chapter XI reorganization in the United States District Court for the Southern District of New York.

The FMI petition evidently caused great concern to Camelia and Farnale who, as rival creditors, apparently viewed their lien interests in the Jackson condominium units as in potential conflict with FMI's deed of trust in that same property. Hence, Camelia and Farnale began an action in the United States District Court for the Southern District of Mississippi (Walter M. Nixon, *Judge*) seeking to ensure the superiority of their lien claims in the Jackson property over any competing claims asserted by FMI as holder of the deed of trust. This federal action was brought by Camelia and Farnale on March 24, 1975, almost two months after FMI filed its Chapter XI petition in New York.

As a result of the federal action begun by Camelia and Farnale, FMI was required to deposit almost $76,000 with the Mississippi district court. FMI was also required to incur the costs of defending its interests in that lawsuit.

It is the position of FMI that Camelia and Farnale were barred by the Bankruptcy Rules from instituting an action in Mississippi without first securing permission from the bankruptcy judge in New York,

---

1. For the statutory definition of a real estate investment trust, see § 856 of the Internal Revenue Code, 26 U.S.C. § 856. For a discussion of the tax advantages of real estate investment trusts, see 7 Mertens, *Law of Federal Income Taxation* § 41A.01 et seq. (1967); 1 Rabkin & Johnson, *Federal Income Gift and Estate Taxation* § 2.15 (1963).

who had two months earlier received FMI's Chapter XI petition. Accordingly, FMI moved in the New York bankruptcy court (Asa S. Herzog, *Judge*) that Camelia and Farnale be held in contempt for initiating the Mississippi action without first securing permission from the court in New York in which FMI had earlier filed its Chapter XI petition.

Judge Herzog, after a hearing participated in by the parties, held both Camelia and Farnale in contempt for knowingly initiating the Mississippi action without his permission. The lawyers for Camelia and Farnale, as well as two corporate officers, were held in contempt also.

However, Judge Herzog, rather than punishing the contempt with the limited sanctions available to a bankruptcy judge, certified the matter to the United States District Court for the Southern District of New York (Richard Owen, *Judge*), pursuant to Rule 920(a)(4) of the Bankruptcy Rules. Judge Owen accepted Judge Herzog's factual findings, accordingly held the defendants in contempt and ordered that FMI be paid costs, including reasonable attorneys' fees for the defense of the Mississippi action and for the prosecution of the contempt proceeding. Judge Owen also ordered the defendants to cause the return of FMI's $76,000 deposit in the Mississippi district court.

Camelia, Farnale and the lawyers and officers held in contempt appeal from Judge Owen's order. They urge us, on a variety of jurisdictional, substantive, constitutional and procedural grounds, to reverse the decision of the district court as to both liability and punishment. We decline this invitation and affirm the contempt order of the district court in all respects.

### I.

Before turning to the arguments advanced on appeal, it may be useful to review the statutory and regulatory scheme of which the defendant-appellants are adjudged in contempt.

Rule 11–44 of the Bankruptcy Rules mandates that a Chapter XI petition shall automatically stay other judicial proceedings against the debtor-in-possession except by permission of the bankruptcy court with whom the Chapter XI petition is filed. Section 41(a) of the Bankruptcy Act, 11 U.S.C. § 69(a), compels obedience to "any lawful order, process or writ" of a bankruptcy judge. Rule 920, premised upon the statutory authority of § 41(a), permits bankruptcy judges to punish via contempt proceedings. Rule 920(a)(3) limits the contempt sanctions available to bankruptcy judges to fines not in excess of $250. However, Rule 920(a)(4) authorizes bankruptcy judges to certify contempt proceedings to district judges when it appears to the bankruptcy judges that greater sanctions are warranted.

District judges are not limited to the same contempt sanctions as bankruptcy judges.

Camelia and Farnale instituted their action in Mississippi district court approximately two months after FMI filed its Chapter XI petition in New York. Camelia and Farnale acknowledge that the Mississippi action was initiated without the permission of the New York bankruptcy court. Under Rule 11–44, the petition filed by FMI in New York acted as a stay to prevent the subsequent Mississippi action. Camelia and Farnale proceeded with the Mississippi action anyway.

Judge Herzog, accordingly, found that Camelia and Farnale had violated the Rule 11–44 stay. He certified the case to Judge Owen pursuant to Rule 920(a)(4). Judge Owen issued the contempt order now on appeal.

With this background, we turn to the arguments advanced by Camelia and Farnale.

### II.

■ Camelia and Farnale claim that a contempt order cannot be premised upon Rule 11–44 on the facts of this case. First, they argue that the meaning of Rule 11–44 is unclear and that, under accepted law, a person cannot be held in contempt for violating an imprecise order.

Second, they argue that they cannot be held in contempt because they did not know of FMI's Chapter XI petition in New York and, therefore, did not know of the consequent stay. The evidence before Judge Herzog, Camelia and Farnale assert, failed to indicate that they knew of the stay. Proof of such knowledge, they point out, is essential before there can be a finding of contempt.

Third, Camelia and Farnale argue that Judge Owen erred when he accepted as not clearly erroneous Judge Herzog's findings that Camelia and Farnale did know of the New York stay. Judge Owen's review of the facts, they claim, should have been *de novo*.

Finally, Camelia and Farnale argue that they were not bound by the New York stay since they had not received formal notice of it pursuant to Rule 602(a) of the Bankruptcy Rules.

We find these arguments unpersuasive.

It is, of course, true that, for a person to be held in contempt, the court order violated must "be specific and definite." *In Re Rubin,* 378 F.2d 104, 108 (3d Cir. 1967). See, also, *In Re LaMarre,* 494 F.2d 753, 758 (6th Cir. 1974). It is, however, not true, as Camelia and Farnale assert, that Rule 11–44 is imprecise and therefore cannot serve as the basis for a contempt order.

Rule 11–44 bars "the commencement or the continuation of any court or other proceeding against the debtor" after the debtor has filed a Chapter XI petition. It is difficult to conceive of a rule with a more apparent and certain meaning: after the Chapter XI petition has been filed, a debtor cannot be sued. *Cf. In Re Brown,* 147 U.S.App.D.C. 156, 454 F.2d 999 (1971).

It is also true, as Camelia and Farnale assert, that a person cannot be held in contempt of an order about which the person had no knowledge. *In Re Rubin, supra; Yates v. United States,* 316 F.2d 718, 723 (10th Cir. 1963). However, the evidence presented to Judge Herzog amply documented knowledge on the part of Camelia,

Farnale and their agents of FMI's Chapter XI petition and the consequent stay under Rule 11–44.

The evidence before Judge Herzog indicated the following: (a) that defendant-appellant Goodale, an officer of Farnale, read about FMI's Chapter XI petition in the *Wall Street Journal,* the day after that petition was filed; (b) that defendant-appellant Hubbard, counsel for Camelia and Farnale, read that article also; (c) that, prior to the initiation of the Mississippi action, Hubbard had also read about FMI's Chapter XI petition in state court papers filed by FMI and that Hubbard had read Rule 11–44 at that time; (d) that Hubbard confirmed the existence of FMI's Chapter XI petition in a telephone conversation with the clerk of the New York bankruptcy court, that conversation occurring the day before the commencement of the Mississippi action and (e) that the complaint filed by Camelia and Farnale in the Mississippi district court referred to the Chapter XI petition of which Camelia and Farnale now deny any knowledge.

In short, there was ample evidence to support Judge Herzog's finding that Camelia and Farnale, and their agents, knew of FMI's Chapter XI petition and the consequent Rule 11–44 stay.

District Judge Owen accepted those findings as not clearly erroneous. Camelia and Farnale assert this was error because Judge Owen was required to review *de novo* the evidence with respect to Camelia and Farnale's knowledge of the Chapter XI petition. We disagree.

Rule 752(a) of the Bankruptcy Rules provides that all findings of fact made by a court in a bankruptcy context "shall not be set aside unless clearly erroneous." By virtue of Rule 901 and 11 U.S.C. § 1(9), the term "court" in Rule 752(a), and thus the clearly erroneous standard, apply to the factual findings of bankruptcy judges, such as the findings certified by Judge Herzog to Judge Owen. Rule 810 also prevents district courts from setting aside findings of

fact by bankruptcy judges unless clearly erroneous.

Nevertheless, Camelia and Farnale, relying on *O'Hagan v. Blythe,* 354 F.2d 83 (2d Cir. 1965), argue that the facts certified by Judge Herzog to Judge Owen were to be reviewed by Judge Owen *de novo,* rather than pursuant to the clearly erroneous standard of Rules 752(a) and 810.

*O'Hagan* was decided eight years before Rules 752(a) and 810 went into effect. Assuming, *arguendo,* that *O'Hagan,* a criminal contempt case, did stand for the position asserted by the creditors, that decision was superseded subsequently at least as to civil contempt proceedings by Rules 752(a) and 810 which, on their face, establish a clearly erroneous standard for review of factual findings by bankruptcy judges. No exception is made in either rule for factual findings with respect to contempt proceedings.

Finally, Camelia and Farnale argue that they were not bound by the stay established by Rule 11–44 since FMI failed to give them formal notice of the Chapter XI petition as required by Rule 602(a).

■ There is no merit to this position; as the *Rubin* decision makes clear, a person is in contempt of court if he knowingly violates a court order, whether or not he received a formal notice. The cases do not require that the contemnors have received formal notice if they have actual knowledge of the order. Hence, the issue of formal notice is irrelevant to Camelia and Farnale's contempt since it is clear that they, in fact, did know of the stay which they ignored.

In short, there unquestionably was a sound factual basis for Judge Herzog's findings that the creditors knew of FMI's Chapter XI petition and that, in filing the subsequent action in Mississippi anyway, the creditors violated the "specific and definite" provisions of Rule 11–44. Those findings were not clearly erroneous, and thus, under Rules 810 and 752(a), they must be allowed to stand.

### III.

■ Camelia and Farnale also argue that the bankruptcy court lacked authority and jurisdiction to enter a contempt citation for a violation of Rule 11–44. We disagree.

By virtue of Rule 920(a), the contempt power of the courts in bankruptcy proceedings is limited to punishment for conduct which violates § 41(a) of the Bankruptcy Act. Section 41(a) commands obedience to all "order[s], process[es] and writ[s]" of the bankruptcy courts. 11 U.S.C. § 69(a).

The essence of Camelia and Farnale's contempt is that they violated Rule 11–44 which forbids the unauthorized commencement of a judicial proceeding against a debtor subsequent to the filing by the debtor of a Chapter XI petition. However, Rule 11–44 is just that: a rule. Section 41(a) does not literally command obedience to "rules," but only to "order[s], process[es] and writ[s]." Hence, Camelia and Farnale claim, the contempt power of Rule 920(a) is unavailable for punishment of the infraction of a mere rule since the language of § 41(a) does not encompass rules.

We find this overly-formalistic argument unpersuasive.

The position of Camelia and Farnale is that the courts have no power to enforce the bankruptcy rules via contempt proceedings. That, however, is almost equivalent to saying that the courts cannot enforce the rules at all. To state the position of Camelia and Farnale is to refute it. The bankruptcy rules are to be construed "to secure the expeditious" and "speedy" processing of bankruptcy petitions. Rule 903. Construing the rules so that they cannot be enforced via contempt is obviously inconsistent with that policy.

Rule 11–44 specifically provides that a Chapter XI proceeding "shall operate as a stay of the commencement" of any proceedings against the debtor or with respect to the debtor's property. Since Rule 11–44 has the effect of an order and was designed to expedite automatically the stay that would otherwise be obtained by an order,[2] it

2. For a discussion of court orders designed to stay subsequent proceedings against debtors-

in-possession, see 1 Collier, *Bankruptcy,* 2.62 (14th ed. 1972). For the purposes of our opin-

would be exalting form over substance to hold that a violation of Rule 11–44 is not punishable under § 41(a) and Rule 920 because technically the rule-based stay is not labeled an "order, process or writ."

Indeed, the district courts have found the contempt power of Rule 920(a) quite useful and necessary in enforcing Rules 401 and 601, rules which establish automatic stays in a manner quite similar to Rule 11–44. See, *In Re Tallyn,* Bank.L.Rep. ¶ 65,617 (E.D.Va. 1975); *In Re Robert Young,* 1 Collier Bankruptcy Cases 145 (M.D.Fla.1974).

In short, we conclude that the contempt power of the courts under § 41(a) and Rule 920 includes the authority to enforce the rules themselves via contempt orders. To hold otherwise would be to deprive the courts of the authority necessary to ensure that the rules are obeyed.

■ Camelia and Farnale also argue that the bankruptcy court was without jurisdiction in the proceeding below because of a prior state court action which Camelia and Farnale had instituted against the Jackson condominium developer before FMI filed its Chapter XI petition. Prior to the filing of that petition, Camelia and Farnale brought suit in a Mississippi state court to foreclose their mechanic's and materialmen's liens on the condominium project. That prior state court action, Camelia and Farnale argue, preempted subsequent assumption of jurisdiction by the federal bankruptcy court with respect to the condominium project.

We disagree. Section 311 of the Bankruptcy Act, 11 U.S.C. § 711, confides to the bankruptcy court "exclusive jurisdiction of the debtor and its property, wherever located." Statutes which confide exclusive jurisdiction to specialized courts are not to be construed in a manner which impairs that exclusivity. Exclusive jurisdiction means exclusive jurisdiction. *Fritz v. United States,* 535 F.2d 1192 (9th Cir. 1976).

And, indeed, the need for exclusive jurisdiction in bankruptcy proceedings is compelling. Such jurisdiction is necessary "to exclude any interference by the acts of others or by proceedings in other courts where such activities or proceedings tend to hinder the process of reorganization." 6 Collier, *Bankruptcy* ¶ 3.03 at 424 (14th ed. 1972).

When FMI filed its Chapter XI petition, the New York bankruptcy court, by virtue of § 311, assumed exclusive jurisdiction over all of FMI's property interests. The Jackson condominium project was one such interest and, thus, § 311 deprived the Mississippi state court of the jurisdiction which it exercised until then.

It is not without significance that Rule 11–44 stays "the commencement or the *continuation*" of proceedings against the debtor-in-possession. (Emphasis added.) While the bankruptcy rules cannot, of course, expand the jurisdiction of the federal courts, we think it noteworthy that Rule 11–44 stays all actions, both state and federal, in progress when the bankruptcy petition is filed. Such a rule would be useless if those prior, pending actions deprive the bankruptcy courts of jurisdiction over the property involved in them.

In short, § 311 prevents the prior state action from depriving the New York bankruptcy court of jurisdiction with respect to the Jackson condominium project. Section 311 requires that all matters affecting the debtor-in-possession be centralized in a single tribunal. The requirement of exclusive jurisdiction is clear and, thus, the Mississippi state court proceeding must give way to the mandate of § 311 which assured the bankruptcy court of jurisdiction over all property in which FMI had an interest, regardless of any pending state proceeding.

■ Camelia and Farnale also claim that FMI, as holder of the first deed of trust, did not have a property interest in the condo-

ion, the important point is that Rule 11–44 now makes the establishment of such stays automatic. In the absence of such automatic stays, the debtors-in-possession secured specific court orders to the same effect. We see no reason to treat a stay explicitly granted by the court differently from a stay established by rule, at least with respect to the courts' enforcement powers via contempt.

minium project and that, accordingly § 311 did not establish jurisdiction in the New York bankruptcy court. A mere mortgage interest, Camelia and Farnale assert, does not constitute "property" within the meaning of the bankruptcy laws. Again, we must disagree.

In bankruptcy contexts, "the term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." *Segal v. Rochelle,* 382 U.S. 375, 379, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966). Indeed, we think that the *Segal* decision makes it clear that FMI's interest under the deed of trust was a property interest for the purposes of the bankruptcy statutes and therefore conferred jurisdiction over the Jackson condominium project to the New York bankruptcy court. *Segal, supra,* at 379–81, 86 S.Ct. 511.

■ Camelia and Farnale also argue that their action in the United States District Court in Mississippi would not have affected FMI's reorganization prospects and that, therefore, Rule 11–44 did not bar their Mississippi action. We disagree.

The complaint filed with the Mississippi district court asked for a determination that Camelia and Farnale's liens in the unfinished Jackson condominium project are superior to FMI's interest as holder of the first deed of trust in the project. To put it in the simplest possible terms, Camelia and Farnale want, by virtue of their allegedly superior claims, $76,000 from the liquidated proceeds of the unfinished project which might otherwise be available to FMI by virtue of its deed of trust.

Under these circumstances, it is most inaccurate to say that the Mississippi action can have no effect upon FMI. Indeed, the purpose of the action is to secure $76,000 for Camelia and Farnale which, in the absence of the action, would go to FMI.

Finally, Camelia and Farnale cite *Mid-Jersey National Bank v. Fidelity-Mortgage Investors,* 518 F.2d 640 (3d Cir. 1975), and argue, on its authority, that the bankruptcy court did not have jurisdiction below and that, therefore, Rule 11–44 was inapplicable. Such reliance on *Mid-Jersey* is misplaced.

In *Mid-Jersey,* a bank which had loaned money to FMI sued FMI when it failed to repay on schedule. Judgment was entered for the bank, and FMI was required to post a $300,000 deposit with the district court, in lieu of a supersedeas bond, in order to appeal that judgment.

After the deposit was made and while the appeal was pending, FMI filed its Chapter XI petition. Then, before the Third Circuit, FMI argued that the intervening Chapter XI petition stayed the appeals court from hearing the case.

The Third Circuit disagreed. Rule 11–44, it reasoned, stays only those proceedings which involve property over which the bankruptcy court has jurisdiction. However, the appeals court held, the $300,000 deposit was "in custodia legis," which is to say, no longer FMI's property, but rather the *res* of a trust held by the district court. Since the deposit was not FMI's property, it was not within the jurisdiction of the bankruptcy court under § 311 and, therefore, Rule 11–44 was held inapplicable to the appeal.

*Mid-Jersey* is distinguishable from the instant appeal in at least one crucial respect: here, unlike the situation in the earlier decision, there is a property interest of FMI's existing at the date of institution of the Chapter XI proceeding which gives the bankruptcy court jurisdiction and which therefore makes Rule 11–44 applicable. As we noted above, the decision of the Supreme Court in *Segal v. Rochelle* indicates that FMI, as holder of a deed of trust, had a property interest in the Jackson condominium project which gave the bankruptcy court jurisdiction under § 311.

In short, the fundamental premise of the Third Circuit's decision in *Mid-Jersey* was that the property giving rise to the appeal, then in the form of a district court deposit, was no longer the debtor's and therefore was not within the jurisdiction of the bank-

ruptcy court. Here, on the other hand, the interest under the deed of trust in the Jackson project was property of FMI and therefore was within the jurisdiction of the bankruptcy court. Since the basic premise of *Mid-Jersey*—no property of the debtor—is inapplicable here, its conclusion is also.

In summary, we conclude that there was jurisdiction in the bankruptcy court and that the court had the authority to issue a contempt citation for a violation of Rule 11–44. Moreover, as the *Segal* decision makes clear, FMI's interest under the deed of trust in the Jackson project was a property interest within the exclusive jurisdiction of the New York bankruptcy court. We accordingly reject the argument that the bankruptcy court lacked authority for the action it took below.

## IV.

■ Camelia and Farnale also raise two constitutional issues in their effort to avoid Judge Owen's contempt citation. First, they argue on the authority of *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and its progeny, *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), that Rule 11–44 denies creditors due process of law by automatically staying the creditors' rights to commence judicial proceedings, without first giving notice and a hearing to the affected creditors. Since Rule 11–44 becomes operative upon the filing of a Chapter XI petition and since creditors are not given prior notice or hearing to contest that petition, Rule 11–44 denies creditors' rights of judicial relief in violation of due process—so Camelia and Farnale claim.

Camelia and Farnale misconstrue the meaning of due process in the post-*Sniadach* era. *Sniadach* and its progeny do not require that creditors always be given notice and a hearing prior to proceedings which affect their interests. Even in cases involving both property and liberty interests "there are recurring situations in which

prior notice and hearing cannot be insisted upon . . . In such cases, the necessary notice and . . . hearing should follow as soon as possible." *Goss v. Lopez,* 419 U.S. 565, 582–83, 95 S.Ct. 729, 740, 42 L.Ed.2d 725 (1975). The requisites of due process in such cases are met if notice and a hearing are given promptly after governmental authority has been invoked. *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 611–20, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).

The policy considerations underlying Rule 11–44 are considerable. The automatic stay of Rule 11–44 is designed to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts. The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another.

Moreover, the rule itself provides a procedure for lifting the automatic stay. Rule 11–44(d) specifically mandates that motions to modify or lift stays established by Chapter XI petitions shall be heard on "the earliest possible date." There is even a provision which allows the bankruptcy judge to lift the Rule 11–44 stay without notice to the debtor-in-possession if quick action is necessary to prevent "immediate and irreparable injury, loss or damage" to the creditors. Rule 11–44(e).

Rule 11–44 provides for an immediate hearing and relief from any hardship that an automatic stay might cause. In short, there is no constitutional infirmity in Rule 11–44 since that rule itself gives the creditors an immediate opportunity to have the stay lifted or modified and since the policy considerations requiring such initial stays are not insignificant.

■ For their second constitutional claim, Camelia and Farnale argue that the fact-finding methods used by Judges Herzog and Owen violated standards of due process.

Judge Herzog conducted a show cause hearing on FMI's complaint and then certified his findings to Judge Owen who conducted a second show cause proceeding. Camelia and Farnale now argue that one or the other judge should have conducted a proceeding, but not both. Since both the district and the bankruptcy judges conducted their own separate hearings, Camelia and Farnale assert, a violation of due process occurred.

When stripped to its essentials, Camelia and Farnale's claim is that due process is violated when a contemnor is given too many opportunities to present his side of the case. This is a rather novel theory of due process.

It is perhaps true, as Camelia and Farnale assert, that Judge Herzog could have certified this matter to Judge Owen without first conducting a show cause hearing in the bankruptcy court. It may also be true, as Camelia and Farnale assert, that in light of Judge Herzog's prior hearing, it was unnecessary to hold a second adversary proceeding in the district court.[3]

Nevertheless, we fail to understand why an extra hearing, even if not contemplated by the bankruptcy rules, should violate due process. Indeed, it is a unique theory of constitutional law to argue, as do Camelia and Farnale, that they were denied due process since they had too many opportunities to present their side of the controversy. This is a theory of due process which we decline to accept.

In short, we can see nothing unconstitutional in Rules 11–44 and 920 on their face or as applied here. Rule 11–44 itself provides creditors an immediate opportunity to challenge the automatic stay as it affects them. The procedures utilized below to implement the courts' power under Rule 920 gave Camelia and Farnale all the process which was due to them. In the absence of any constitutional errors, we therefore decline to overturn the contempt citation of the court below.

## V.

Camelia and Farnale also argue that, notwithstanding the language of Rule 11–44, they were authorized to commence their action in the United States District Court for the Southern District of Mississippi by virtue of 28 U.S.C. § 959. That provision authorizes lawsuits against debtors-in-possession "with respect to any of their acts or transactions in carrying on business." Thus, Camelia and Farnale claim, § 959 authorized their action against FMI.

We disagree. When viewed in the context of the statutory framework for Chapter XI reorganizations, it is clear that § 959 does not permit the type of action which Camelia and Farnale instituted in Mississippi against FMI.

The evident purpose of § 959 is to enable a debtor-in-possession to continue his business subsequent to the filing of a Chapter XI petition. If debtors-in-possession were immunized from all suits after filing Chapter XI petitions, it would be difficult, if not impossible, for them to remain in business. Suppliers would be less likely to provide merchandise, banks would be less likely to extend credit and workers would be less likely to undertake employment with a debtor-in-possession if they were foreclosed from suing the debtor for wages or other obligations incurred after the Chapter XI petition is filed.

Hence, § 959 makes debtors-in-possession suable for the routine occurrences which arise from efforts to continue "carrying on business" after the Chapter XI petition is filed.

However, § 959 was not intended to serve as *carte blanche* for creditors seeking to sue debtors-in-possession in a forum of the creditors' choosing. As has been emphasized throughout our discussion, the policy of the bankruptcy statutes has been to centralize, at least initially, all creditor suits in a single forum so as to prevent a chaotic scramble for the debtor's assets, a scramble

---

**3.** We, of course, express no opinion as to the correctness of these assertions. We merely accept them *arguendo* for our analysis of the

asserted due process claim advanced by Camelia and Farnale.

which could very well lead to conflicting decisions from different courts.

Hence, a suit against FMI which stems from FMI's efforts to conduct routine business is permitted under § 959. A suit to enhance a creditor's position in the reorganization of the bankrupt is not so authorized.

We conclude, on the facts of this case, that Camelia and Farnale's suit in Mississippi was of the latter sort, an action arising out of FMI's bankruptcy based on pre-bankruptcy operations rather than FMI's efforts to continue operations. As this court recognized in *Austrian v. Williams*, 216 F.2d 278, 285 (2d Cir. 1954), the "attempt to collect and liquidate assets of a debtor is not to carry on its business in any proper sense of the term." Nevertheless, that is precisely what we have here, an attempt by Camelia and Farnale to secure their position against FMI's assets as a result of FMI's bankruptcy.

The line between suits stemming from the continuing conduct of business and those actions not permitted by § 959 is, perhaps, in certain instances less apparent than one might like. Nevertheless, on the facts of this case, it is clear that Camelia and Farnale's action arose from FMI's bankruptcy, rather than FMI's continuing conduct of business, and that accordingly, the action was one not authorized by § 959.

## VI.

■ Camelia and Farnale claim that, under Mississippi law, their liens on the unfinished condominium project established rights superior to FMI's interest stemming from the deed of trust in that same project. Prior to the filing of its Chapter XI petition, FMI had initiated procedures to foreclose on the condominium project and to use the assets derived from foreclosure to satisfy the construction loan advanced by FMI. The federal action initiated by Camelia and Farnale, they assert, was a justifiable effort to prevent FMI from improperly appropriating the unfinished condominium project for the satisfaction of FMI's allegedly inferior claim.

It may be true, as Camelia and Farnale assert, that, by virtue of their allegedly superior claim under Mississippi law, they are entitled to protection against the consequences of FMI's attempted foreclosure on the condominium project. That, however, is not the issue in this case, as it presently stands before us. The issue here is whether, at the time Camelia and Farnale filed their federal action, the Mississippi district court was the proper forum for them to advance these arguments.

We conclude that it was not.

Camelia and Farnale were aware of FMI's Chapter XI petition in New York almost immediately after it was filed. At that point, Rule 11–44 required Camelia and Farnale to secure the permission of the New York bankruptcy court before filing a separate action in Mississippi. As noted above, the need to centralize bankruptcy-related proceedings and to prevent a chaotic scramble for the debtor's assets is an interest of paramount importance in the bankruptcy laws.

Camelia and Farnale, rather than addressing their state law claims to the New York bankruptcy court, proceeded to file an action in Mississippi. It is this willful violation of the procedures established by the bankruptcy rules which is at issue here.

In short, the validity of Camelia and Farnale's substantive claim under Mississippi law is not relevant to Judge Owen's contempt citation or this appeal. The issue here is a procedural one: whether Camelia and Farnale should have secured permission from the New York bankruptcy court before proceeding with their action in Mississippi.

Rule 11–44 required Camelia and Farnale to secure such prior permission. They deliberately did not and, hence, were in contempt of the New York bankruptcy court. That Camelia and Farnale may have a valid substantive position under Mississippi law does not mitigate, excuse or justify their willful procedural violation of the federal bankruptcy rules.

## VII.

■ Finally,[4] Camelia and Farnale argue that Attorney Hubbard, counsel to Camelia and one of the contemnors who appeals to this court, cannot be held in contempt by virtue of his status as an attorney. This conclusion, Camelia and Farnale assert, is mandated by *Maness v. Meyers*, 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975).

We disagree. Indeed, the *Maness* decision specifically affirmed that lawyers can be cited for contempt for advising clients to disregard court orders. *Maness, supra* at 459–60, 95 S.Ct. 584. The *Maness* decision does carve out an exception to this rule in certain cases raising fifth amendment issues. However, there are no such fifth amendment interests involved in this case and, thus, Attorney Hubbard has no basis for resisting the contempt citation on the authority of *Maness.*

## VIII.

In conclusion, Camelia and Farnale provide no basis—jurisdictionally, substantively, procedurally, or constitutionally—for us to reverse the decision and order of the district court. Rule 11–44 clearly required Camelia and Farnale to secure the permission of the New York bankruptcy court before filing an action against FMI in Mississippi. Camelia and Farnale did not secure such permission and, therefore, must be prepared to confront the consequences.

We accordingly affirm the order of the district court in all respects. Of course, our decision does not preclude Camelia and Farnale from raising their substantive claims, again, in a proper forum in accordance with proper procedures.

VAN GRAAFEILAND, Circuit Judge (dissenting):

Although the War between the States terminated more than a century ago, it might be difficult to convince appellants of this fact. Residents of Texas, they have been fined $20,000 for alleged violation of a rule governing the practice and procedure of a bankruptcy court in New York City in a proceeding in which they were not even parties. I cannot join my brothers in their approval of what has taken place.

Appellants, Camelia Builders, Inc. and Farnale, Inc., were mechanics lienors of a construction project in Jackson, Mississippi; and, if they wished to have the benefit of their liens, were required to commence suit to foreclose within twelve months after their debt came due. Miss.Code of 1972 § 85–7–141. They did commence suit in Rankin County Court of Mississippi in January, 1975.

Fidelity Mortgage Investors (FMI) was the interim lender on the project, and its indebtedness was secured by a deed of trust. Shortly after the institution of appellants' suit in Mississippi, FMI commenced a Chapter XI proceeding in New York City and thereafter filed a plea of abatement in the Mississippi action based on this proceeding. It then had one of its attorneys substituted as trustee under the deed of trust, and the attorney commenced the publication required in Mississippi for nonjudicial sale of his trust estate.

Appellant Hubbard, attorney for the mechanics lienors, thus found himself faced with the prospect of an immediate non-judicial sale and possible loss of his clients' liens. He decided that his clients' interests could best be protected by commencing an action in the United States District Court for the Southern District of Mississippi seeking to prevent the trustee's sale, or, alternatively, that it be conducted by chancery proceeding and that FMI be directed to pay over from the proceeds of the sale the sum of $75,964.33, the amount of his clients' liens.[1] District Judge Nixon wisely

---

4. Camelia and Farnale raise two other arguments with respect to alleged conflicts of interest on the part of FMI's attorneys and with respect to an alleged variance between FMI's complaint in the bankruptcy court and the

judgment issued by the district court. We find these arguments to be of such little merit that it is unnecessary to discuss them here.

1. For some unknown reason, appellants named FMI as a party defendant, rather than the trus-

permitted the foreclosure sale to continue but directed the deposit of the $75,964.33 with his court until a determination could be made as to whether these proceeds were the property of FMI or were subject to the prior lien of appellants. It is for their temerity in bringing this action that appellants, including attorney Hubbard, have been held jointly and severally liable for over $20,000.

Section 41(a) of the Bankruptcy Act, 11 U.S.C. § 69(a), provides in part that in proceedings before a referee, a person shall not disobey "any lawful order, process, or writ". Bankruptcy Rule 920 provides that conduct prohibited by § 41(a) may be punished by the referee. The prohibited conduct in the instant case is the alleged violation of Rule 11–44 of the Chapter XI rules, which provides in part that a Chapter XI petition shall operate as a stay of the commencement or continuance of any proceeding against the debtor or to enforce any lien against his property.[2]

28 U.S.C. § 2075 empowers the Supreme Court to prescribe by general rules the "practice and procedure under the Bankruptcy Act". It provides further that such rules "shall not abridge, enlarge or modify any substantive right". The authority granted the Supreme Court by § 2075 is restricted in its operation to matters of pleading and court practice and procedure. *Sibbach v. Wilson & Co.*, 312 U.S. 1, 10, 61 S.Ct. 422, 85 L.Ed. 479 (1941). Bankruptcy rules enacted thereunder may not add to, subtract from or vary the provisions of the bankruptcy law and cannot extend the jurisdiction of a referee beyond that which is conferred upon him by statute. *Meek v. Centre County Banking Co.*, 268 U.S. 426, 434, 45 S.Ct. 560, 69 L.Ed. 1028 (1925); *In*

*re State Thread Co.*, 126 F.2d 296, 300 (6th Cir. 1942).

The jurisdiction of a bankruptcy court is basically in rem, and possession of the res is a prerequisite to the court's summary exercise of its power. *Callaway v. Benton*, 336 U.S. 132, 142, 69 S.Ct. 435, 93 L.Ed. 553 (1949); *Harrison v. Chamberlin*, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897 (1926); *In re Dolly Madison Industries, Inc.*, 504 F.2d 499, 503 (3d Cir. 1974); *Texas & N. O. R. R. v. Phillips*, 211 F.2d 419, 421 (5th Cir. 1954), *cert. denied*, 348 U.S. 913, 75 S.Ct. 293, 99 L.Ed. 716 (1955). Congress did not give bankruptcy courts jurisdiction over all controversies that in some way affect the debtor's estate, *In re Beck Industries, Inc.*, 479 F.2d 410, 415 (2d Cir.), *cert. denied*, 414 U.S. 858, 94 S.Ct. 163, 38 L.Ed.2d 108 (1973); *In re Unishops, Inc.*, 494 F.2d 689, 690 (2d Cir. 1974); and the mere financial interest of a bankrupt's estate in the outcome of litigation pending in state court does not authorize the issuance of an injunction against its prosecution. *In re Adolf Gobel, Inc.*, 80 F.2d 849, 852 (2d Cir. 1936).

In *In re Stanndco Developers, Inc.*, 534 F.2d 1050 (2d Cir. 1976), we held squarely that a bankruptcy court has no jurisdiction to restrain state court proceedings seeking to enforce liens on property not belonging to the debtor. This holding is in accord with similar decisions in other circuits which hold that mortgaged premises are not the "property" of the bankrupt mortgagee within the meaning of the Bankruptcy Act. *See, e. g. Brunn v. Wichser*, 75 F.2d 25, 28 (3d Cir. 1934); *In re Holiday Lodge, Inc.*, 300 F.2d 516, 519 (7th Cir.), *cert. denied*, 371 U.S. 824, 83 S.Ct. 43, 9 L.Ed.2d 63 (1962); *In re A. Roth Co.*, 125 F.2d 396, 398 (7th Cir. 1942). I am unable to reconcile the holding

tee who was planning to conduct the sale. However, it is clear that appellants were not seeking any affirmative relief against FMI but were attempting only to protect their interest as lienors of the Jackson, Mississippi construction project.

**2.** Rule 920(a)(3) provides that a referee shall not order imprisonment nor impose a fine of more than $250 as punishment for contempt.

If he believes that more substantial punishment is warranted, he may certify the facts to a district judge who "shall proceed as for a contempt not committed in his presence". Rule 920(a)(4). In the instant case, the referee found appellants guilty of contempt and then certified the facts to the District Court which made an additional finding based upon the certified facts.

of the majority herein with *Stanndco* and the cases above cited. In my opinion, FMI's interest as beneficiary of a deed of trust did not confer jurisdiction over the Jackson construction project in the New York bankruptcy court.

Some states, such as Mississippi, use a deed of trust to perform the functions of a mortgage. 4A Powell on Real Property § 574. A deed of trust is conveyed to one other than the lender who holds it in trust for both the lender and the borrower. 9 Thompson on Real Property § 4660. Under Mississippi law, the lender, as beneficiary of the deed of trust, has no estate in the land, but only an interest therein to the extent that he can cause the trustee to sell the land and apply the proceeds to the payment of the secured debt. *Baker v. Conn. General Life Ins. Co.*, 196 Miss. 701, 18 So.2d 438 (1944). There is nothing in the Mississippi mortgaging procedure which justifies a holding that mortgaged premises are the "property" of the mortgagee. In my opinion, the summary jurisdiction of a bankruptcy referee would be extended far beyond the intent of Congress if an action by one lienor to enforce his lien could be stayed by a bankruptcy rule of practice and procedure simply because another lienor had filed for a Chapter XI arrangement.[3]

No court has the power to punish for the violation of an order issued without jurisdiction over the subject matter or the parties. *Brougham v. Oceanic Steam Navigation Co.*, 205 F. 857, 860 (2d Cir. 1913). Likewise, a court without jurisdiction over the person of an alleged contemnor cannot punish him for the alleged violation of one of its rules. *DeParcq v. United States District Court*, 235 F.2d 692 (8th Cir. 1956). If, as I believe, the referee in bankruptcy had

no jurisdiction over the construction project in Jackson, Mississippi, neither he nor the District Court was empowered to hold appellants in contempt for attempting to protect their lien rights in that property.

Assuming, however, that the bankruptcy referee did have jurisdiction over the persons of appellants, he did not have the power to institute Rule 920 proceedings against them for violation of Rule 11–44. Prior to the promulgation of the bankruptcy rules, a referee had no power to punish for contempt. *O'Hagan v. Blythe*, 354 F.2d 83, 84 (2d Cir. 1965). Bankruptcy Rule 920 now authorizes a referee, in proceedings before him to punish for disobedience of "any lawful order, process, or writ" or to certify the facts to the District Court for such punishment. I disagree with my brothers when they hold a bankruptcy rule of practice and procedure to be a "lawful order" within the meaning of this rule. Many years ago, this Court committed itself to the proposition that statutory contempt proceedings should be reviewed in a highly technical manner, stating that "where Congress has been so industrious to restrict the natural inherent powers of a federal court, scrupulous attention to the limitations it has imposed would seem to be the proper course." *In re Probst*, 205 F. 512, 513 (2d Cir. 1913). The contempt powers of a federal court are specifically limited by statute, *Berry v. Midtown Service Corp.*, 104 F.2d 107, 109 (2d Cir.), *cert. granted,* 308 U.S. 536, 60 S.Ct. 114, 84 L.Ed. 452, *appeal dismissed per stipulation,* 308 U.S. 629, 60 S.Ct. 297, 84 L.Ed. 525 (1939); and such powers should not be extended beyond the plain terms of the statute which grants them. *Denver-Greeley Valley Water Users' Ass'n v. McNeil*, 131 F.2d 67, 70 (10th Cir. 1942).[4]

---

**3.** If, as the majority seems to hold, premises subject to a lien are the "property" of the lienor, interesting legal problems are presented. There may be three or four mortgages and 50 to 100 mechanic's liens on file against a building project. As these lienors take turns in filing for bankruptcy or for bankruptcy Chapter proceedings in various parts of the United States, resolution of the jurisdictional maze which results will be a formidable task.

**4.** With all due respect to my brothers, I do not think that it is "overly-formalistic" to require a federal court to comply with the strict language of a contempt statute. Neither do I believe that such requirement exalts "form over substance". A man such as appellant Hubbard must work long and hard to accumulate $20,-000. Before we permit a court to take this from him, using the "legal thumbscrew" of contempt, we should be sure that it has kept

18 U.S.C. § 401 empowers a court of the United States to punish for disobedience of its "lawful writ, process, order, *rule*, decree, or command." (Emphasis supplied). In contrast, in proceedings before a referee, punishment for contempt is limited to violations of a "lawful order, process, or writ." 11 U.S.C. § 69. The omission of the word "rule" could not have been inadvertent. The phrase "lawful order" is also used in § 14(c)(6) of the Bankruptcy Act (11 U.S.C. § 32(c)(6)) wherein it is provided that the bankruptcy court shall grant a discharge unless satisfied that the bankrupt "has refused to obey any lawful order of, or to answer any material question approved by the court." Sections 14 and 49 of the Bankruptcy Act are read together so that, upon the failure of a petitioner to obey an order of the referee, the referee has the alternative of either denying discharge or holding petitioner in contempt. *In re Kokoszka*, 479 F.2d 990, 997 (2d Cir. 1973), *aff'd*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974).

In cases decided under § 14, the courts have concerned themselves with the violation of orders, not of rules. We have required, not only that the order violated be an express court order, *Berry v. Midtown Service Corp., supra*, 104 F.2d at 110, but also that it be a "lawful" one. *In re Teperman*, 123 F.2d 732 (2d Cir. 1941). I see nothing in 28 U.S.C. § 2075 or the orders of the Supreme Court issued pursuant thereto to indicate that the phrase "lawful order" is hereafter to be so broadly construed as to include within its meaning all of the newly enacted bankruptcy rules.[5]

When these rules were approved by the Supreme Court, Mr. Justice Douglas expressed strong disagreement with Rule 920,

quoting the statement of Chief Justice Taft in *Cooke v. United States*, 267 U.S. 517, 539, 45 S.Ct. 390, 396, 69 L.Ed. 767 (1925) that the exercise of contempt power is "a delicate one and care is needed to avoid arbitrary or oppressive conclusions." Had Justice Douglas known that Rule 920 would be construed to empower a referee to punish anyone even remotely affected by the broad sweep of a bankruptcy court's jurisdiction for violation of one of the many, little known rules of bankruptcy procedure, I am sure his disagreement would have been expressed in even stronger terms.

Appellants have absconded with no money belonging to the debtor in arrangement; it is safely under the control of the United States District Court in Mississippi awaiting a determination as to whether it is the property of FMI or appellants. I see no injustice in requiring FMI to prove its right to these funds in a plenary proceeding in the Mississippi District Court. I believe, on the other hand, that appellants have been dealt with most unjustly by being held in contempt of a New York bankruptcy referee's "lawful order" and required to pay $20,000 from their own pockets because of such "contempt".

For the reasons above set forth, I respectfully dissent.

---

strictly within the limitations of the statute which empowers it to act. This is not exalting form over substance. It is simple justice.

5. I do not share my brothers' concern about the enforcibility of rules of practice and procedure which are not self-executing, cf. *Bardin v. Mondon*, 298 F.2d 235, 238 (2d Cir. 1961). More importantly, since Congress did not provide that in proceedings before a referee punishment could be imposed for the violation of a

rule, it, too, felt that a referee's "lawful orders" could enforce such compliance as was required. It is interesting to note that Official Form 11–F13 covering notice to creditors in a Chapter XI proceeding is now in the form of an order and incorporates the language of Rule 11–44. This indicates to me that something more is required to call forth the punitive sanctions of contempt than the mere enactment of the rule.