### In the Matter of NATIONAL HOSPITAL AND INSTITUTIONAL BUILDERS COMPANY, a partnership, Debtor.

### No. 80 Civ. 6073 (PNL).

United States District Court,
S.D. New York.

Feb. 25, 1981.

Arthur Olick, Anderson, Russell, Kill & Olick, P.C., New York City, for respondent.

Judah Dick, Allen G. Schwartz, Corp. Counsel, New York City, for appellant.

## OPINION AND ORDER

LEVAL, District Judge.

This is an appeal from a ruling of The Honorable John J. Galgay, Bankruptcy Judge,[1] holding that administrative efforts by The City of New York to revoke the Certificate of Occupancy of a nursing home owned by the debtor violated the automatic stay provisions of Rule 12–43 of the Rules of Bankruptcy Procedure, and enjoining the revocation proceedings under authority of Section 411 of the 1898 Bankruptcy Act, 11 U.S.C. § 811.

The basic facts are not in dispute. The debtor's sole asset is real property at 1000 Targee Street on Staten Island on which stands an unoccupied structure built as a nursing home for the aged. The New York City Department of Health gave its approval for the establishment of the nursing home in April, 1966. Construction of the home was begun by a prior owner in June, 1969. Construction was completed in 1973. In January and March 1973 temporary C.O.s were issued. In June 1973 a final C.O. was issued. However, the New York State Public Health Council of the New York State Department of Health declined to give the home "establishment approval" because of an excess of nursing homes on Staten Island.

The debtor acquired the property in 1975. In June 1977 the mortgagee of the building began a suit in New York State Supreme Court to foreclose its mortgage. Judgment

of foreclosure was entered, and the foreclosure sale was set for September 1, 1977.

One day before the foreclosure sale, the debtor filed a petition for a real property arrangement under Chapter XII of the Bankruptcy Act, 11 U.S.C. §§ 801–926. The foreclosure sale was stayed by the automatic stay provision of Bankruptcy Rule 12–43.

In March 1978 the Trustee obtained the agreement of the New York State Department of Health that establishment approval might be granted under a special provision of New York law applicable to religious groups, N.Y.Pub.Health Law § 2801–a(3) (McKinney), if an Hassidic group could demonstrate a need for nursing homes among its adherents. The trustee then entered into a contract for the sale of the nursing home to Beth Rifka, Inc., an Hassidic Jewish organization, conditioned upon Beth Rifka obtaining required licenses and certificates.

Beth Rifka applied to the State Department of Health for establishment approval, which was granted in September 1980.

In the meantime Staten Island community groups brought pressure on New York City governmental bodies, seeking to prevent the establishment of the nursing home. These efforts apparently were quite successful. In May 1980, Philip Goldstein, Borough Superintendent of the Department of Buildings, indicated his intention to institute proceedings before the Board of Standards and Appeals to revoke the Certificate of Occupancy. On August 4 he formally applied to the Board for revocation of the C.O.[2]

---

1. Case No. 77 B 2265.

2. The City's claim is that, although the nursing home was in accord with the applicable zoning regulations when built, later amendments to the zoning regulations made the use of the building as a nursing home a non-conforming use; its authorization for non-conforming use had been abandoned through non-use and was therefore subject to revocation.

   The trustee argues that the City's interpretation of the applicable zoning regulations is inaccurate on a number of grounds; first, the trustee claims that the zoning amendments were not meant to apply to buildings that were

already constructed; second, even if the amendments did apply to such buildings and the use of the building as a nursing home was a non-conforming use, the building had never been abandoned, and thus, the non-conforming use had not lapsed. Because I do not think that the Bankruptcy Court is an appropriate forum for the determination of the correct interpretation and applicability of the zoning regulations I do not reach the merits of the zoning dispute; I note that the dispute appears to involve at least one question of first impression under New York State law.

The trustee then moved in the Bankruptcy Court by order to show cause for a stay barring Goldstein and the Board from revoking, or pursuing the proceedings to revoke, the C.O. As noted above, Judge Galgay, in a decision filed October 8, ordered the revocation proceedings stayed, from which decision this appeal is taken.[3]

Judge Galgay, after reviewing the history of the nursing home, made findings that the City's revocation efforts were belated and were in response to pressure by community groups, that the City did not believe in good faith that the home would endanger or harm the community or neighborhood, and that the State had an interest in having the home opened.

He concluded that the revocation proceedings were not valid exercises of the City's "police powers" under its zoning laws, and that the revocation efforts were, therefore, not exempt from the automatic stay of Rule 12–43.

Judge Galgay concluded it was an appropriate exercise of the Bankruptcy Court's powers to enjoin the revocation proceedings under § 411 of the Bankruptcy Act which gives the Bankruptcy Court exclusive jurisdiction of the debtor and his property.

In my view, Judge Galgay's opinion failed to give proper deference to the rule that state regulatory power is beyond the scope of Section 411's exclusive grant of jurisdiction.

This statute, operating together with the mandatory stay provisions set forth in the rules of the various bankruptcy chapters, protects the debtor against multiple, uncoordinated suits brought in various jurisdictions by a multitude of claimants. It gives the debtor a certain breathing spell and permits him to meet the various claimants in a single forum in coordinated proceedings under the supervision of a single judge. The statute and rule are motivated in part by the recognition that most estates would be torn apart by legal fees and chaos (to the disadvantage of all) if the debtor were required to answer every separate action in a separate proceeding in whatever court it may be asserted. *See Fidelity Mortgage Investors v. Camelia Builders, Inc., (In re Fidelity Mortgage Investors),* 550 F.2d 47, 55 (2 Cir. 1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 *reh. den.,* 430 U.S. 976, 97 S.Ct. 1670, 52 L.Ed.2d 372 (1977).

Courts have long recognized, however, that a state's enforcement of its regulatory powers (sometimes called police powers) against the debtor or its property is a different kind of matter affected by different considerations. The fact that one has filed a bankruptcy should not exempt him from jurisdiction of the local traffic courts or criminal courts if he drives the wrong way on a one-way street or commits a criminal assault. Similarly if a state administrative agency is charged with the responsibility of establishing and enforcing an anti-pollution plan, it would not make sense to deprive the agency of power to enforce the plan against bankrupt subjects, except at the sufferance of the bankruptcy court.

A state's (or municipality's) enforcement of its regulatory laws generally calls for uniform application consistent with an overall plan to achieve a desired effect, whether it be the achievement of clean air standards, preservation of the cleanliness of the town's drinking water, zoning for industry, commerce and residence[4] or whatever.

---

3. The trustee sought in the alternative that Goldstein be held in contempt for violation of the automatic stay of Rule 12–43, which application was denied.

4. It is worth noting that in the area of zoning and land use planning federal courts have often abstained in deference to the primacy of local governmental policy. *See, e. g., Isthmus Landowners Ass'n v. California,* 601 F.2d 1087 (9 Cir. 1979); *Rancho Palos Verdes Corp. v. City of Laguna Beach,* 547 F.2d 1092 (9 Cir. 1976); *Hill v. El Paso,* 437 F.2d 352 (5 Cir. 1971).

The enforcement of these plans is ordinarily entrusted either to police, town council or specialized administrative body, with protection against unjust, discriminatory or illegal enforcement being entrusted to the local and state courts. The concerns of such regulatory plans have generally little or nothing to do with the question of payment of debts or with whether any subject is solvent or insolvent. Many such regulatory plans would be impaired, or at least applied in a chaotic irrational fashion, if the responsible administrative bodies were deprived of authority over any subjects which happened to be engaged in federal insolvency proceedings.

The responsibility and expertise of the bankruptcy court, in contrast, is to achieve orderly reorganization or distribution to creditors of the estates of bankrupts. It has nothing to do with the enforcement of state regulatory power. Nor is the ability of the bankruptcy court to supervise orderly liquidation or reorganization overcome if the bankrupt remains subject to local regulatory power.

For such reasons, it has been established for many years in court decisions that the jurisdiction of the bankruptcy court does not extend to the enforcement of state regulatory power.[5] The sign-post decision on this principle is the opinion of Judge A. N. Hand in 1938, in *Smith v. New York State Liquor Authority, Inc.*, (*In re Bay Ridge Inn, Inc.*), 94 F.2d 555 (2 Cir.) reversing an attempt by the district court in bankruptcy to overturn a forfeiture imposed on the bankrupt by the State Liquor Authority.

The same principle was recently invoked by the district court in Massachusetts, *Colonial Tavern, Inc. v. Byrne*, (*In re Colonial Tavern, Inc.*), 420 F.Supp. 44 (1976), which noted:

> The force of Judge Hand's opinion [in *Bay Ridge*] is even more apparent in the context of a Chapter XI proceeding, which is voluntary, and in which Rule 11–44 operates automatically upon the filing of a petition. If the debtor's position were to be adopted, Chapter XI would provide an instantly available, cheap and easy sanctuary from all state regulatory enforcement proceedings

—a consideration equally applicable to a reorganization under Chapter XII. *See also In re Shippers Interstate Service, Inc.*, (*Appeal of NLRB*), 618 F.2d 9 (7 Cir. 1980); and *NLRB v. Jonas*, (*In re Bel Air Chateau Hospital, Inc.*), 611 F.2d 1248 (9 Cir. 1979), applying the same rule to labor board proceedings.

Another consideration implicit in this principle is that the bankruptcy court, with its paramount concern for the success of the particular reorganization or for maximizing recovery by creditors, may well have little interest in the state's enforcement of its regulatory powers[6] where this endangers the success of the particular reorganization. The opinion of the bankruptcy judge, here, for example, made repeated reference to three years of effort expended in achieving successful reorganization which would be aborted if the C.O. were revoked.

---

5. The new Bankruptcy Code, which does not apply to this case, explicitly provides that the automatic stay provision does not operate as a stay

> of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

[Presently enacted as 11 U.S.C. § 362(b)(4).]

6. *See, e. g., In re Zeitzer Food Corp.*, 9 C.B.C. 614 (E.D.N.Y.1976) (state enjoined from revoking license to purchase and resell farm prod-

ucts); *Whalen v. Parkchester General Hospital*, (*In re Parkchester General Hospital*), 4 B.C.D. 292 (S.D.N.Y.1978) (automatic stay applies to proceedings to revoke hospital's operating certificate; court vacated stay); *Hillsdale Foundry Co. v. People*, (*In re Hillsdale Foundry Co.*), 2 C.B.C. 542 (W.D.Mich.1974) (automatic stay covers enforcement of air pollution law); *compare Diversion-Graphics, Inc. v. Lefkowitz*, (*In re Diversa-Graphics, Inc.*), 2 B.C.D. 194 (S.D. N.Y.1976) (automatic stay does not stay state criminal proceedings).

Judge Galgay recognized the existence of the principle, but, in my view, gave insufficient deference to it. Because he found improper motivation and political influence, he considered this not to be a valid exercise of state police power and therefore not within the rule of the *Bay Ridge* case. The conclusion does not follow. This reasoning effectively gives the bankruptcy court supervisory review of state regulations.

The authority of the New York City Department of Buildings and of the Board of Standards and Appeals over zoning is a matter of state regulatory power, outside the scope of the exclusive jurisdiction of the bankruptcy court. If those regulatory agencies act in a discriminatory and improperly motivated fashion, redress lies in the state courts according to the review provisions of state law.[7] The arguments advanced by the trustee that state review is too slow to save the reorganization are irrelevant. The exclusive jurisdiction and automatic stay provisions were never intended to place a bankrupt above and beyond the reaches of state regulatory law.

The order appealed from is reversed and the case remanded.

So ordered.

---

**7.** Additionally, if constitutional rights are involved, redress may lie in the federal courts under civil rights statutes.